UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| RANDY BLANKENCHIP AND SUSAN BLANKENCHIP,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITIMORTGAGE, INC.; CAL-WESTERN RECONVEYANCE, LLC; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CIV. NO. 2:14-2309 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION TO DISMISS</u> |

----oo0oo----

        Plaintiffs filed this action in state court, arising out of allegations that defendants breached a loan modification agreement and wrongfully foreclosed on their home. Defendant Citimortgage, Inc. removed the action to federal court under 28 U.S.C. § 1441(b) on the basis of diversity jurisdiction. Presently before the court is Citimortgage's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

1

12(b)(6) for failure to state a claim upon which relief can be granted.

I.   Factual and Procedural Background

Plaintiffs' allegations concern a residential mortgage loan they took out for their home in Suisun City, California. (Compl. ¶ 2 (Docket No. 1).)  Due to a reduction in their income, plaintiffs struggled to maintain their monthly loan payments and sought a loan modification. (Id. ¶ 13.)  Citimortgage agreed and sent them a Home Affordable Modification Program Trial Period Plan agreement. (Id. ¶ 14.)

The terms of the modification agreement required plaintiffs to make three timely payments of $2,758.05 to qualify for a permanent modification.  The first payment was due on July 1, 2011, the second on August 1, 2011, and the third on September 1, 2011. (Id. ¶ 15.)  The agreement further promised that "after all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified." (Id. ¶ 16.)

In addition to the modification agreement, Citimortgage sent a document entitled "Important Program Info," which stated, "The terms of your trial period plan are effective on the day you make your first trial period payment . . . . We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the trial plan." (Compl. ¶ 17.)  The document further stated that "[a]ny pending foreclosure action or proceeding that has been suspended may be resumed if you are notified in writing that you failed to comply with the terms of the trial period plan or do not qualify for a permanent

2

1  modification." (Id.)

2  Plaintiffs allege they accepted the agreement by making
3  their first trial period payment by July 1, 2011. (Id. ¶ 18.)
4  Plaintiffs allege each of the three payments under the trial plan
5  were timely, (id. ¶¶ 18-22.), despite the fact that the Notice of
6  Trustee recorded their second payment date as "August 5," which
7  plaintiffs allege is an error, (id. ¶ 20). Citimortgage
8  postponed the sales date of plaintiffs' home while plaintiffs
9  remained in the trial plan. (Id. ¶ 21.)

10  Ultimately, Citimortgage did not provide plaintiffs
11  with a permanent payment modification. (Id. ¶ 22.)
12  Nevertheless, plaintiffs continued to pay the modified amount
13  after the trial period ended. (Id.) The bank set a new sales
14  date of November 10, 2011. (Id.) However, it allegedly promised
15  plaintiffs that it would not pursue a foreclosure sale while it
16  continued to review plaintiffs' eligibility for a permanent
17  modification. (Id. ¶ 23.)[1]

18  On November 3, 2011, seven days before the proposed
19  foreclosure sale, Citimortgage sent plaintiffs a letter stating
20  that "the deadline for you to return the required documentation
21  for the Home Affordable Modification Program has been extended,"
22  giving plaintiffs until December 5, 2011 to submit the required
23  documentation. (Id.) The letter cautioned that "this deadline
24  is real—don't risk being dropped from the [modification]
25  program." (Id.)

---

[1] Plaintiffs do not allege who at Citimortgage made this promise, only that the promise was "in line with the terms of the written Agreement dated June 13, 2011." (Id. ¶ 23.)

3

1        Despite the November 3, 2011 letter's assurances,
2   Citimortgage proceeded to sell plaintiffs' home on November 10,
3   2011.  (Id. ¶ 25.)  Plaintiffs brought several claims against
4   defendants Citimortgage and Cal-Western Conveyance, LLC, alleging
5   the foreclosure sale was wrongful on multiple grounds: (1)
6   wrongful foreclosure; (2) breach of contract; (3) promissory
7   estoppel; (4) breach of the implied covenant of good faith and
8   fair dealing; (5) fraud; (6) violations of California Business
9   and Professions Code sections § 17200, et seq.; and (7)
10  intentional infliction of emotional distress.  Defendant
11  Citimortgage now move to dismiss all of plaintiffs' claims.
12  II.  Judicial Notice
13       In general, a court may not consider items outside the
14  complaint when deciding a motion to dismiss, but it may consider
15  items of which it can take judicial notice.  Barron v. Reich, 13
16  F.3d 1370, 1377 (9th Cir. 1994).  Citimortgage requests that the
17  court take judicial notice of eighty-five pages of material:
18  various deeds of trusts and reconveyances pertaining to
19  plaintiffs' residence, (Def.'s Req. for Judicial Notice Exs. 1-7
20  (Docket No. 6)); plaintiffs' notice of default, (id. Ex. 8);
21  correspondence between plaintiffs and Citimortgage spanning the
22  period of June 13 to October 14, 2011, (id. Exs. 9-13); notice of
23  the trustee's sale to Polymathic properties and the corresponding
24  deed of grant, (id. Exs. 14-15); and Polymathic and
25  Citimortgage's business entity detail from the California
26  Secretary of State website, (id. Exs. 16-17).
27       Such requests for judicial notice in conjunction with a
28  motion to dismiss have become common practice among litigants in

4

1 | this court.  Citimortgage moves to dismiss under 12(b)(6), and
2 | not for summary judgment pursuant to Rule 56.  While on a motion
3 | for summary judgment the court looks to evidence, see Anderson v.
4 | Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting the court
5 | must determine whether there is sufficient evidence to create a
6 | triable issue), on a motion to dismiss, the court is limited to
7 | the allegations in the plaintiff's Complaint, Pareto v. F.D.I.C.,
8 | 139 F.3d 696, 699 (9th Cir. 1998).  At oral argument,
9 | Citimortgage insisted it did not wish the court to convert its
10 | motion into one for summary judgment.  The court may therefore
11 | only take notice of those records that fall into one of the
12 | narrow exceptions identified by Ninth Circuit precedent.

13 |       Through the "incorporation by reference" doctrine, the
14 | court may "take into account documents . . . alleged in a
15 | complaint and whose authenticity no party questions, but which
16 | are not physically attached to the [plaintiff's] pleading . . .
17 | even though the plaintiff does not explicitly allege the contents
18 | of that document in the complaint."  Knievel v. ESPN, 393 F.3d
19 | 1068, 1076 (9th Cir. 2005) (internal quotation marks and
20 | citations omitted).  Citimortgage has not indicated how specific
21 | allegations contained in the plaintiffs' Complaint "incorporate"
22 | any of its exhibits.  Citimortgage asserts categorically that
23 | "plaintiffs' entire pleading implicitly references and
24 | necessarily relies on the contents of Citi's correspondence set
25 | forth as Exhibits 9 through 11 and 13 . . . ."  (Def.'s Request
26 | for Judicial Notice at 13.)  After independently reviewing the
27 | Complaint, the court could not find an allegation referencing any
28 | of the letters submitted by Citimortgage; plaintiffs only

5

1 | reference a letter dated November 3, 2011.  (Compl. ¶ 23.)
2 |       If Citimortgage is trying to raise a factual dispute,
3 | it must do so in the context of a motion for summary judgment.
4 | The more generously a court interprets the word "incorporate,"
5 | the more a motion to dismiss will impermissibly come to resemble
6 | a cheapened motion for summary judgment.  See Baker, 150 F. Supp.
7 | 2d at 16 (declining to consider a defendant's motion in the
8 | alternative for summary judgment before the plaintiff has been
9 | "afforded an appropriate opportunity to conduct discovery and
10 | submit materials").  Furthermore, the incorporation doctrine
11 | "permits" the district court to consider material outside
12 | pleadings, but it does not require it.  See Knievel, 393 F.3d at
13 | 1076 (recognizing the incorporation doctrine "permits" the court
14 | to take into account documents incorporated by the complaint
15 | (emphasis added)).  In exercising its discretion, the court will
16 | not extend the doctrine here.
17 |       A court may also take judicial notice of matters of
18 | public record in deciding a motion to dismiss.  Lee v. City of
19 | Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), impliedly
20 | overruled on other grounds as recognized by Gollardo v. Dicarlo,
21 | 203 F. Supp. 2d 1160, 1162 n.2 (C. D. Cal. 2002).  The court is
22 | hesitant to permit Citimortgage to proffer a selection of public
23 | records, possibly incomplete and out of context, where plaintiff
24 | has not had the opportunity to do so.  Like the incorporation by
25 | reference doctrine, the court may exercise its discretion in
26 | deciding to take notice of public records on a motion to dismiss.
27 | See id. (noting a court "may" take judicial notice of matters of
28 | public record and reviewing the district court's decision to take

notice for abuse of discretion (emphasis added)).  Accordingly, the court will deny Citimortgage's request for judicial notice of those exhibits Citimortgage deems are public records.

III. Analysis

On a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

A. Wrongful Foreclosure

Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale.  See Karisen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (2d Dist. 1971). Generally, "[a] full tender must be made to set aside a foreclosure sale, based on equitable principles."  Stebley v. Litton Loan Servicing, LLP, 202 Cal. App. 4th 522, 526 (3d Dist. 2011)).

Plaintiffs admit they never fully tendered, (see Compl. ¶¶ 26-27), but contend that "[r]equiring plaintiffs to tender the

7

1  complete indebtedness would be inequitable," (Pl.'s Opp'n at 4).
2  The court agrees.  The allegations in this case are
3  distinguishable from those instances in which courts require a
4  plaintiff to allege tender of indebtedness when the plaintiff is
5  attacking some irregularity in the sale procedure, and not the
6  validity of the foreclosure itself.  See, e.g. Abdallah v. United
7  Savings Bank, 43 Cal. App. 4th 1101, 1109 (1st Dist. 1996)
8  (dismissing appellants' claim that the trustee unlawfully failed
9  to notify them when the sale would take place because appellants
10 never tendered their indebtedness).  "Tender is not required
11 where the foreclosure is void, rather than voidable, such as when
12 a plaintiff proves that the entity lacked the authority to
13 foreclose on the property."  Glaski v. Bank of Am., Nat'l Ass'n,
14 218 Cal. App. 4th 1079, 1100 (5th Dist. 2013) (declining to
15 dismiss a claim although plaintiff failed to allege tender, where
16 plaintiff sought damages because the trustee's signature was
17 forged to effectuate a fraudulent foreclosure and trustee's sale
18 of his home); Subramani v. Wells Fargo Bank N.A., Civ. No. 13-
19 1605 SC, 2013 WL 5913789, at *4 (N.D. Cal. Oct. 31, 2013)
20 (declining to dismiss plaintiff's claim although he failed to
21 tender where he sufficiently alleged the foreclosure sale was
22 void because defendant was no longer the valid lender).

23         Here, plaintiffs are not seeking to set aside a
24 foreclosure sale that was procedurally flawed; they seek damages
25 based on the alleged invalidity of the foreclosure sale in the
26 first place.  (Compl. ¶¶ 28-32.)  Because plaintiffs allege the
27 foreclosure was wrongful because it was void, the court will not
28 grant Citimortgage's motion to dismiss the wrongful foreclosure

claim on the basis that plaintiffs failed to allege tender.

B.   <u>Breach of Contract and Implied Covenant of Good Faith and Fair Dealing</u>

The essential elements of a breach of contract claim are: (1) the existence of a valid contract between the parties; (2) plaintiff's performance or excuse for nonperformance; (3) defendants' unjustified or unexcused failure to perform; and (4) damages to plaintiff caused by the breach.  <u>See</u> <u>Lortz v. Connell</u>, 273 Cal. App. 2d 286, 290 (1st Dist. 1969).  Additionally, "[t]he law implies in every contract . . . a covenant of good faith and fair dealing.  The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits."  <u>Wilson v. 21st Century Ins. Co.</u>, 42 Cal. 4th 713, 720 (2007).

Plaintiffs allege Citimortgage breached the loan modification agreement when it foreclosed on their home, despite the bank's promise that it would not do so while plaintiffs remained in the trial payment plan.  (Compl. ¶ 38.)  In addition to alleging Citimortgage breached the express terms of the modification agreement, plaintiffs also allege Citimortgage's proceeded in bad faith when they pursued the foreclosure sale on November 10, 2011, after sending plaintiffs a letter that extended the filing deadline for paperwork until December 5, 2011.  (<u>Id.</u> ¶ 23.)  As a result, plaintiffs allege they lost their home and incurred numerous expenses due to their eviction.  (Id. ¶ 50.)

Citimortgage argues that plaintiffs failed to make timely payments as required by the trial plan and thus their

9

1    breach of contract and implied covenant claims must fail.
2    (Def.'s Mem. at 6 (Docket No. 5).)  In support of this assertion,
3    Citimortgage requested the court to take judicial notice of
4    correspondence between plaintiffs and itself over a several month
5    period in 2011, but the court denied that request for the reasons
6    stated above.  Plaintiffs allege all three of the payments under
7    the trial payment plan were timely and they were still within the
8    modification plan when Citimortgage foreclosed on their home.
9    Because the court must accept plaintiffs' allegations that they
10   made timely payments and remained in the trial payment program,
11   plaintiffs plausibly allege claims for breach of contract and of
12   the implied covenant of good faith and fair dealing.  See Warshaw
13   v. Xoma Corp., 74 F.3d 955, 977 (9th Cir. 1996) (holding that on
14   a 12(b)(6) motion to dismiss, the court "take[s] as true all
15   allegations of material fact stated in the complaint and
16   construe[s] them in the light most favorable to the nonmoving
17   party").  Accordingly, the court will deny Citimortgage's motion
18   to dismiss those claims.
19     C. Promissory Estoppel
20          Under California law, a plaintiff alleging a promissory
21   estoppel claim must allege: (1) the existence of a promise "clear
22   and unambiguous in its terms"; (2) "reliance by the party to whom
23   the promise is made"; (3) that any reliance was both "reasonable
24   and foreseeable"; and (4) that the party asserting the estoppel
25   was injured by his reliance. US Ecology, Inc. v. State, 129 Cal.
26   App. 4th 887, 901 (4th Dist. 2005) (quoting Laks v. Coast Fed.
27   Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).
28          Citimortgage argues plaintiffs cannot show that it

breached any clear and unambiguous promise to give rise to a claim for promissory estoppel. (Def.'s Mem. at 7.) According to plaintiffs' Complaint, Citimortgage representatives initially told plaintiffs to miss payments in order to place their loan into default status, as they could not qualify for a permanent modification if their loan status remained current. (Complaint ¶ 10.) Once plaintiffs had defaulted, plaintiffs allege that Citimortgage promised, "We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of your trial period plan," (id. ¶ 42), and that this promise induced plaintiffs to enter into the program and fail to pursue other alternatives to foreclosure to keep their home from being sold, (id. ¶¶ 44-45).

Because plaintiffs plausibly allege the existence of Citimortgage's clear, unambiguous promise not to foreclose on the property while plaintiffs remain in the trial payment plan, the court will deny Citimortgage's motion to dismiss plaintiffs' promissory estoppel claim.

### D. Fraud

It is well established that "[a] district court may dismiss a claim '[i]f the running of the statute [of limitations] is apparent on the face of the complaint.'" Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045 (9th Cir. 2011). In California, the statute of limitations for a fraud claim is three years. Cal. Civ. Proc. § 338(d). "The cause of action in that case is not deemed to have accrued until discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Id. Citimortgage asserts that plaintiffs

11

must have discovered the facts constituting the alleged fraud in August 2011, because plaintiffs received a notice of trustee's sale on August 5, 2011.  The filing date of plaintiffs' action-- August 24, 2014--would therefore be outside the 3-year statute of limitations window.  However, plaintiffs allege that Citimortgage continued to assure them that they would remain in the trial program as of its November 3, 2011 letter.  (Compl. ¶ 23.) Therefore, it is plausible plaintiffs did not discover the alleged fraud until after the November 3 letter, when they discovered the property was sold.  Plaintiffs' fraud claim is thus not barred by the three-year statute of limitations.

Rule 9(b)'s heightened pleading standards apply to claims premised on fraud.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed R. Civ. P. 9(b).  Although plaintiffs premise their action on Citimortgage's "false promise," "an action based on a false promise is simply a type of intentional misrepresentation, i.e. actual fraud."  Tarmann v. State Farm Mut. Augo. Ins. Co., 2 Cal. App. 4th  153, 159 (6th Dist. 1991). "To maintain an action for deceit based on a false promise, one must specifically allege and prove . . . that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing."  Id.  Additionally, the defendant must have made the promise with the intent to defraud the plaintiff.  See Kearns, 567 F.3d at 1126 (stating the elements for fraud).

1          Plaintiffs allege that Citimortgage did not intend on
2   performing its promise to hold off on foreclosing on their home
3   while they remained in the trial payment program.  (Compl. ¶ 55.)
4   In support, plaintiffs allege that the foreclosure sale took
5   place only seven days after Citmortgage stated that plaintiffs
6   had another month to complete their paperwork in order to remain
7   in the trial plan program.  (Id.)  Plaintiffs also allege that
8   Citimortgage lured them into default status, (id. ¶ 10), and
9   induced them to enter into the trial plan agreement, (id. ¶ 56).
10  The court finds these allegations sufficiently particular to
11  support a claim for fraud, and it will deny Citimortgage's motion
12  to dismiss that claim.
13     E. Unfair Competition Law
14          The California Unfair Competition Law ("UCL") "provides
15  an equitable means through which both public prosecutors and
16  private individuals can bring suit to prevent unfair business
17  practices and restore money or property to victims of these
18  practices."  Yanting Zhang v. Superior Court, 57 Cal. 4th 364,
19  370 (2013).  The California Business and Professions Code defines
20  "unfair competition" to include "any unlawful, unfair, or
21  fraudulent business act or practice."  Cal. Bus. & Prof. Code §
22  17200.  "'[The  UCL] establishes three varieties of unfair
23  competition--acts or practices which are unlawful, or unfair, or
24  fraudulent.'"  Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular
25  Tel. Co., 20 Cal. 4th 163, 180 (1999) (quoting Podolsky v. First
26  Healthcare Corp., 50 Cal. App. 4th 632, 647 (2d Dist. 1996)).
27  "Each prong of the UCL is a separate and distinct theory of
28  liability."  Kearns, 567 F.3d at 1127.

1              Under the UCL, "[a] fraudulent business practice is one
2  in which members of the public are likely to be deceived."
3  Tucker v. Pac. Bell Mobile Servs., 208 Cal. App. 4th 201, 225
4  (1st Dist. 2012) (internal quotation marks and citations
5  omitted).  Like their common law fraud claim, plaintiffs premise
6  their UCL claim on Citimortgage's false promise to grant them a
7  permanent modification upon their successful completion of the
8  trial program and not to foreclose on their home while they
9  remained in the program.  (Compl. ¶ 65.)  In addition to
10 allegations of how the bank deceived them individually,
11 plaintiffs allege Citimortgage engaged in a "complicated and
12 fraudulently concealed scheme aimed at increasing servicing fees
13 and costs to the detriment of plaintiffs," (Compl. ¶ 67), and
14 that the bank acted in a manner that was wrongful and likely to
15 mislead members of the general public, (id. ¶ 67).  Plaintiffs
16 need not allege that members of the public were actually
17 deceived.  See Tucker, 208 Cal. App. 4th at 225 ("[R]elief under
18 the UCL is available without individualized proof of deception,
19 reliance and injury").  Plaintiffs' allegations support the
20 inference that, like the plaintiffs, the general public would be
21 deceived by Citimortage's alleged fraudulent practice, and the
22 court therefore finds plaintiffs have alleged a plausible claim
23 under the UCL.
24             Citimortgage argues that plaintiffs' UCL claim fails
25 because the statute permits plaintiffs to seek only injunctive
26 relief or restitution, and that plaintiffs are not entitled to
27 either.  Plaintiffs may not seek not an injunction, the bank
28 contends, for the same reasons they cannot set aside the

14

1  foreclosure,[2] and plaintiffs are not entitled to restitution
2  because they have not returned the consideration they paid under
3  the promissory note.  (Def.'s Mem. at 12-13.)

4      "Both the unfair competition law and the false
5  advertising act contain broad remedial provisions which authorize
6  the courts to correct violations." Consumers Union of U.S., Inc.
7  v. Alta-Dena Certified Dairy, 4 Cal. App. 4th 963, 972 (1st Dist.
8  1992).  Section 17203 states, "The court may make such orders or
9  judgments, including the appointment of a receiver, as may be
10 necessary to prevent the use or employment by any person of any
11 practice which constitutes unfair competition . . . or as may be
12 necessary to restore to any person in interest any money or
13 property, real or personal, which may have been acquired by means
14 of such unfair competition."  A private person who suffers loss
15 of money or property has standing to seek such an injunction.
16 Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321 (2011)
17 (noting someone who has suffered injury in fact and has lost
18 money or property as a result of unfair competition has standing
19 under the UCL).  Nothing in the statute suggests plaintiffs need
20 to have "tendered" in order to seek an injunction under the UCL,
21 where plaintiffs are asking the court to enjoin an unfair
22 business practice.

23     Accordingly, because plaintiffs' Complaint plausibly
24 alleges that Citimortgage engaged in a fraudulent business

---

[2] Citimortgage argues plaintiffs may not set aside the foreclosure because plaintiffs never tendered and the home was sold to a bona fide purchaser.  While there are no allegations in the Complaint regarding the sale to the bona fide purchaser, plaintiffs do allege, as previously discussed, that they never tendered.

15

practice, and that the plaintiffs are not precluded from seeking injunctive relief under the UCL, the court will deny Citimortgage's motion with respect to this claim.

### F. Intentional Infliction of Emotional Distress

The statute of limitations for a claim of intentional infliction of emotional distress in California is two years. Cal. Civ. Proc. § 335.1. "Generally, a limitations period begins to run upon the occurrence of the last fact essential to the cause of action." Pugliese v. Superior Court, 146 Cal. App. 4th 1444, 1452 (2d Dist. 2007). There is an exception to this rule "[w]here a tort involves a continuing wrong." Id. In that case, "the statute of limitations does not begin to run until the date of the last injury or when the tortuous acts cease." Id.

The elements for plaintiffs' IIED claim would have thus occurred in November 2011 upon the sale of their home, which is the conduct plaintiffs allege caused them severe emotional distress. Plaintiffs filed this action in August 2014, nine months after the two-year statute of limitations ended. Plaintiffs have not alleged a "continuing wrong," only that they suffered emotional distress for an unsaid duration. Because plaintiffs' claim does not fall into the "continuing wrong" exception, their claim for intentional infliction of emotional distress is barred by the statute of limitations.[3] Accordingly,

---

[3] Plaintiffs' reference to Hernandez v. Attisha, Civ. No. 9-2257 IEG WMC, 2010 WL 81610, at *4 (S.D. Cal. Mar. 5, 2010) is to no avail here. In Attisha the court found that where the conduct complained of is continuing in nature, and the plaintiff continues to suffer emotional distress as a result, the "continuing wrong" doctrine applies to determine when the statute of limitations begins to run. Here, plaintiffs do not allege a

the court will grant Citimortgage's motion to dismiss that claim.

        IT IS THEREFORE ORDERED that defendant Citimortgage's motion to dismiss be, and the same hereby is, GRANTED with respect to plaintiffs' claims intentional infliction of emotional distress; and DENIED with respect to all of plaintiffs' other claims.

        The court does not require that plaintiffs amend their Complaint, but should they choose to do so plaintiffs have twenty days from the date this Order is signed to file an amended complaint, if they can do so consistently with this Order.

Dated:  December 3, 2014

*[signature]*

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

"continuing wrong," so even if there distress was continuing, the exception does not apply.

17