STEPHEN J. FOONDOS (SBN: 148982)
ANDRE M. CHERNAY (SBN: 214890)
UNITED LAW CENTER
3013 Douglas Blvd., Suite 200
Roseville, CA 95661
Office: (916) 367-0630
Facsimile: (916) 265-9000
Email: achernay@unitedlawcenter.com

Attorneys for Plaintiffs
RANDY BLANKENCHIP AND
SUSAN BLANKENCHIP

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY BLANKENCHIP AND SUSAN BLANKENCHIP<br><br>Plaintiffs,<br><br>vs.<br><br>CITIMORTGAGE, INC.; CAL-WESTERN RECONVEYANCE, LLC; and DOES 1 through 50, inclusive,<br>Defendants. | Case No.: 2:14-cv-02309-WSB-AC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **Wrongful Foreclosure**<br>2. **Breach of Contract**<br>3. **Promissory Estoppel**<br>4. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br>5. **Fraud-False Promise**<br>6. **Unlawful Business Practices in Violation of Bus. & Prof. Code §17200, et seq.**<br>7. **Intentional Infliction of Emotional Distress**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiffs RANDY BLANKENCHIP AND SUSAN BLANKENCHIP (jointly referred herein as

Plaintiffs or BLANKENCHIP) allege against Defendants CITIMORTGAGE, INC.; CAL-

WESTERN RECONVEYANCE, LLC; and DOES 1 through 50 (hereinafter referred jointly as

Defendants) as follows:

## I. THE REAL PROPERTY AND PARTIES

1.    BLANKENCHIP are, and at all times relevant herein were, individuals residing in

229 Lawler Ranch Parkway, Suisun City, in the County of Solano, California.

1

2.     The action is against Defendants for damages arising from Defendants' breach of certain contractual terms related to a written agreement to modify the terms of a residential mortgage loan for BLANKENCHIP's residence (hereinafter referred to as the "Subject Loan"), located at 229 Lawler Ranch Parkway, Suisun City, in the County of Solano, California (hereinafter referred to as the "Subject Property").

3.     Defendant CITIMORTGAGE, INC ("CITI") was, at certain times relevant to this action, the purported holder of the beneficial interest of the Subject Loan.

4.     CITI was also acting in the capacity of the loan servicer of the of the Subject Loan at all times relevant to this action.

5.     CAL-WESTERN RECONVEYANCE, LLC ("Cal-Western") was at all times relevant to this action acting as the trustee.

6.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 50 are unknown to BLANKENCHIP, who therefore sues said Defendants by such fictitious names.   BLANKENCHIP will amend this Complaint to show their true names, involvement and capacities when the same have been ascertained.   BLANKENCHIP is informed and believes and thereon alleges that each of the Defendants named herein as DOE was in some manner responsible for the harm and losses suffered by BLANKENCHIP and/or will be responsible for future harm and losses to Plaintiffs.

**II. JURISDICTION AND VENUE**

7.     BLANKENCHIP are, and at all times relevant herein were, an individual residing in the County of Solano.

8.     The Subject Property is located at 229 Lawler Ranch Parkway, Suisun City, California, 94585.

FIRST AMENDED COMPLAINT

9.      CITI, at all times relevant herein, regularly engaged, and engages, in business in the State of California, County of Solano, and regularly provided, and provides, mortgage loan-related services.  The majority of the transactions and events that are the subject matter of this Complaint occurred within the County of Solano, State of California.

10.      Similarly, Freddie Mac, at all times relevant herein, regularly engaged, and engages, in business in the State of California, County of Solano, and regularly provided, and provides, mortgage loan-related services.

11.      Defendant Cal-Western also, at all times relevant herein, regularly engaged, and engages, in business in the State of California, County of Solano, and regularly provided, and provides, trustee and mortgage loan-related services.

### III. GENERAL ALLEGATIONS

12.      All discussions between BLANKENCHIP and CITI were initiated by Plaintiffs from their home in Suisun City, California, were received by BLANKENCHIP at their home in Suisun City, California, or at Mr. Blankenchip's  place of their employment within Solano County, California.   All communications were either in writing by facsimile, US mail, or express courier, or were made orally via telephone.

13.      During the time leading up to June 2011, BLANKENCHIP struggled to maintain their monthly loan payments due, primarily, to the reduced income received by Susan Blankenchip.  Mrs. Blankechip has worked for over 30 years at a private Christian school that her father started in the East Bay of Northern California.  Due to reductions in income, the school struggled to cover expenses and Mrs. Blankenchip would, at times, go without any pay, while at other times she would only receive reduced pay.  Do to these financial difficulties BLANKENCHIP began the process of seeking a loan modification.

14.   BLANKENCHIP contacted CITI by telephone towards the end of 2010, using the toll-free number listed on their monthly mortgage payment statement, to inquire about a loan modification.   After submitting all requested financial documents, CITI reviewed the modification application packet and agreed to send BLANKENCHIP a Trial Period Plan (TPP) for a modification.

15.   BLANKENCHIP received the Home Affordable Modification Program (HAMP) TPP Agreement (Agreement) from CITI on or about June 15, 2011. (A copy of the Agreement is attached hereto as Exhibit A). The Agreement stated that in order "[T]o accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following trial period payments in a timely manner:

1st Payment: $2,758.05 by 7/1/11

2nd Payment: $2,758.05 by 8/1/11

3rd Payment: $2,758.05 by 9/1/11" (Exhibit A)

16.   The Agreement goes on to promise that "[A]fter all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified." (*Id.*)

17.   Along with the June 13, 2011 Agreement, CITI provided a document entitled "Important Program Info". (Exhibit B)   Within the Important Program Info document, the following representations were made: "The terms of your trial period plan are effective on the day you make your first trial period payment, provided you have paid it in or before 7/1/11. You and we agree that: **We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan."** (Exhibit B (emphasis in original)).   "Any pending foreclosure action or proceeding that has been suspended may be

resumed if you are notified in writing that you failed to comply with the terms of the trial period plan or do not qualify for a permanent modification." (*Id.*)

18.    Plaintiffs accepted the Agreement by ensuring that the July 1, 2011 payment was timely made. Acceptance was made in the manner required by CITI's offer.

19.    Accordingly, the foreclosure proceedings that had been commenced by CITI, as evidenced by the Notice of Default (NOD), recorded on May 4, 2011, should have been suspended.

20.    Also as a result of Plaintiffs having accepted the Agreement, the Notice of Trustee Sale, recorded August 5, 2011, should not have been recorded as Plaintiffs had timely made their second Trial Period Plan (TPP) payment.

21.    The original sales date of August 25, 2011 was postponed by CITI as Plaintiffs remained in trial period plan.

22.    Plaintiffs' continued to make payments under the trial period plan even past the September 1, 2011 payment because despite their contractual obligation CITI failed to provide a permanent modification.   In October 2011 BLANKENCHIP was informed by CITI that despite their remaining in the trial payment period and their continuing to make payments, a new sales date of November 10, 2011 was set.

23.    CITI promised BLANKENCHIP that they would not be foreclosed upon as long as they continued to be reviewed for a permanent modification and remained in the trial period plan.  This promise was in line with the terms of the written Agreement dated June 13, 2011. BLANKENCHIP's were further compelled to rely upon CITI's promises due to a correspondence they received from CITI which was dated November 3, 2011, only 7 days before the upcoming scheduled sales date.  Within the correspondence CITI confirmed that

"[T]he deadline for you to return the required documentation for the Home Affordable Modification Program has been extended.  The new deadline to return your information is 12/5/2011." (CITI 11/3/2011 correspondence, Exhibit C)  The correspondence went on to confirm that BLANKENCHIP was still in the HAMP program as it cautioned that "**[T]his deadline is real – don't risk being dropped from the program.**" (Emphasis in original) (*Id.*) This correspondence was authored by CITI representative, Mahogany Burris, who was acting as BLANKENCHIP's "Homeowner Support Specialist".

24.     Prior to the expiration of the time period to respond and provide further documents, December 5, 2011, CITI proceeded to sell BLANKENCHIP's home on November 10, 2011.

25.     Throughout this process, numerous conversations took place between BLANKENCHIP and CITI representatives. CITI is in possession of the representatives identity and dates of communications and this information will be ascertained by Plaintiffs during discovery.

**Tender**

26.     Due to CITI 's unclean hands, equity does not require BLANKENCHIP to allege tender.

27.     Moreover, BLANKENCHIP unconditionally offers to tender to the extent required by law any amount due and owing after offset for damages for CITI's bad acts and without waiver of BLANKENCHIP's rights. BLANKENCHIP is readily willing, and able to perform on the permanent modification wherein the terms would be those agreed to in the TPP.

**FIRST CAUSE OF ACTION**
**Wrongful Foreclosure**

28.     BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1 through 27, above, as though fully set forth herein.

29.    BLANKENCHIP and CITI entered into a Trial Period Agreement which, when successfully completed by BLANKENCHIP would result in a permanent modification of the Subject Loan. (Exhibit A)  The Agreement reached is an enforceable contract to bring the loan payments into a range that would have allowed BLANKENCHIP to save their home from foreclosure. The Agreement would cure any previous arrearage and would bring the loan current. Thereafter, no default would exist.

30.    BLANKENCHIP accepted CITI's offer to enter them into a Trial Period and to reduce their monthly payments to the amount of $2758.05.  CITI, however, breached their own Agreement by selling the Subject Property at a foreclosure sale while the BLANKENCHIPS remained in the HAMP trial period program, despite committing, in writing, that they would not sell the property as long as they remained within the program.  BLANKENCHIP could not have known, and did not know, that CITI was going to breach their contract, fail to honor their promise, and proceed to sale despite their representations.

31.    Despite their promises and contractual obligations, CITI caused the Subject Property to be sold at auction on November 10, 2011 as evidenced by the Trustee's Deed Upon Sale ("TDUS"). (TDUS, Exhibit D)

32.    BLANKENCHIP performed all obligations required of them under the Agreement, remained current on all trial period payments, provided all requested documents to CITI, and continued to qualify in all ways required by CITI to enforce the Agreement.   CITI has proceeded to sell the subject property at a foreclosure auction despite committing, in writing to not do so. For these reasons, BLANKENCHIP is entitled to pursue a cause of action for wrongful foreclosure.

    **WHEREFORE**, Plaintiff prays for judgment in an amount to be proven at trial,

against all Defendants as set forth below and for the invalid foreclosure sale to be set aside.

## SECOND CAUSE OF ACTION
### Breach of Contract

33.     BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1 through 32, above, as though fully set forth herein.

34.     As described in detail above, BLANKENCHIP and CITI entered into a Trial Period Agreement, which if successfully completed by BLANKENCHIP would have resulted in a permanent modification of the terms of the Subject Loan.

35.     A trial loan modification constitutes a valid, enforceable contract under state law. The Agreement constituted an offer by CITI to provide BLANKENCHIP a permanent modification upon their successful completion of the Trial Period. (Exhibit A).

36.     As consideration for the loan modification CITI bargained for, BLANKENCHIP was required to execute the Agreement; make three timely trial period payments in the amount of $2,758.05 and submit numerous financial documents to be analyzed by CITI.  BLANKENCHIP agreed to pay the three trial period payments and continued to make those payments, per CITI's request, even after the initial trial period was successfully completed. These acts were not required under the original note and represent a detriment to BLANKENCHIP.

37.     BLANKENCHIP accepted CITI's offer to enter them into a Trial Plan by returning making a timely first payment.  This means of acceptance was specifically described within the Agreement drafted by CITI.

38.     CITI breached their contractual obligations to BLANKENCHIP by proceeding to sell the Subject Property at a foreclosure auction on November 10, 2011 even though they contracted to not sell the property as long as BLANKENCHIP remained in the HAMP trial program. (Exhibits  A and D)

**Continuing Wrong**

39.     As a result of CITI's breach, BLANKENCHIP has suffered, and will continue to suffer damages including, but not limited to having their home sold at the trustee's sale and their subsequent eviction from their home. Blankenchips' credit rating and credit history has been degraded month in and month out as a result of CITI's continuance and ongoing wrongful reporting of erroneous information to the credit reporting agencies. Despite having fully preformed all terms required of Plaintiffs under the TPP, CITI sold the Subject Property at a trustee's auction. Thereafter, CITI began to report the foreclosure to various credit reporting agencies. The submission of this wrongful information continues to date.  Additional damages, including but not limited to, out of pocket costs associated with complying with the terms of the Agreement and resulting from the sale including moving costs, will be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment in an amount to be proven at trial against CITI and DOES 1 through 50 as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Promissory Estoppel**

40.     BLANKENCHIP incorporates by reference all allegations set forth above and below in paragraphs 1 through 39, above, as though fully set forth herein.

41.     Under the doctrine of promissory estoppel, a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee, and which does induce such action or forbearance, is binding on the promisor if injustice can be avoided only by enforcement of the promise.

42.     Promise Clear and Unambiguous in it Terms: "After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified." (Agreement, Exhibit A) **"We will not proceed to foreclosure sale**

9

**during the trial period, provided you are complying with the terms of the trial period plan.**" (emphasis in original) (Exhibit B).

43.     Reliance by BLANKENCHIP: In reliance of CENTRAL's representations and promises, including those contained within Agreement, "Important Program Info", as well as those representations made by various CITI representatives, BLANKENCHIP made all trial payments and continued to make additional trial payments as had been requested by CITI. CITI directed BLANKENCHIP to miss payments in order to have their loan get into default status, as they would not be qualified for a permanent modification if their loan status remained current. Plaintiffs had been current on their loan prior to CITI making said representations at the end of 2010. BLANKENCHIP also opted to not pursue other options that were available to them including seeking a short sale of the property or even walking away from the property rather than have gone through the emotionally draining experience associated with attempting to get a permanent loan modification. Finally, Mrs. Blankenchip would have secured a new employment position which would have provided her more stable and increased income.  Due to CITI's promises to not sell the property and to provide a permanent loan modification, she decided to stay at Calvary Christian Academy, where she had been employed for over 30 years.  Again, had she known that CITI was not going to honor their promises, Mrs. Blankenchip would have had to make the very difficult decision to leave the school she helped create, but would have certainly done so if it meant keeping her family's home.

44.     Reliance Reasonable and Foreseeable: It was reasonable and that BLANKENCHIP would rely upon the promises made by CITI that upon their successful completion of the Trial Plan they would be given a permanent loan modification and, that while they were in the program the property would not be sold.  BLANKENCHIP contacted CITI, their lender and

loan servicer, to inquire into options that were available to them to assist in lowering their monthly loan payments. BLANKENCHIP explained that they had gone through some significant changes in their professional lives that required them to find a way to either reduce the monthly payments or otherwise find some options to prevent her from having to move their family from their home. The answer to their problems arrived in the mail on or about June 14, 2011 in the form of the CITI Agreement. (Exhibit A) It was clearly foreseeable that any reasonable homeowner in BLANKENCHIP's position would have relied on CITI's promise that, should the Trial Plan be successfully completed, they would be given a loan modification, as this would accomplish BLANKENCHIP's objective of saving their home and not having to move their family.

45.     BLANKENCHIP's Detriment: BLANKENCHIP have been injured by their reliance on CITI's promise. But for CITI's promise, BLANKENCHIP would have pursued other alternatives to foreclosure as described above. Furthermore, BLANKENCHIP has sustained economic injuries as a direct result of their reliance on CITI's promises including the loss of their home, moving expenses, out of pocket expenses, and destroyed credit resulting from the foreclosure sale.

46.     BLANKENCHIP relied on CITI's promise to their detriment, and CITI must be stopped from denying the benefits that they promised BLANKENCHIP.

**WHEREFORE**, BLANKENCHIP seeks to have the sale set aside. In addition, BLANKENCHIP prays for judgment in an amount to be proved at trial against CITI and DOES 1 through 50 as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

47.     BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1

11

through 46, above, as though fully set forth herein.

48.     In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.  CITI and BLANKENCHIP entered into the Trial Plan Agreement which, once successfully completed by BLANKENCHIP would result in the Subject Loan being permanently modified. (Exhibit A) BLANKENCHIP had done everything that the Agreement and CITI required of them until such time that CITI proceeded to sell the Subject Property at a November 10, 2011 foreclosure auction. (Exhibit D)

49.     By proceeding to sell the property despite having specifically promised to not do so as long as BLANKENCHIP remained in the HAMP trial program, CITI failed to perform all of its obligations under the contract and acted in bad faith.

50.     As a direct result of CITI's conduct and actions related to the Agreement, BLANKENCHIP has been harmed as their home was sold at a foreclosure sale;  they have been evicted from the property; and they have incurred significant out of pocket expenses in an amount that will be proven at the time of the trial on this matter.

51.     For these reasons CITI has breached their obligation to act in good faith and deal fairly with BLANKENCHIP to ensure that CITI did not do anything to unfairly interfere with BLANKENCHIP's right to perform under the Agreement and secure a permanent loan modification.

**WHEREFORE**, Plaintiffs pray for judgment against CITI and DOES 1 through 50 as hereinafter set forth.

### FIFTH CAUSE OF ACTION
#### Fraud – False Promise

52.     BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1

12

through 51, above, as though fully set forth herein.

53.     As described above, BLANKENCHIP was harmed because CITI made a false promise whereby if BLANKENCHIP was to successfully complete the Trial Period, including making three timely payments in the amount of $2,758.05 then they would be provided a permanent loan modification.  In addition, CITI promised to not sell the Subject Property as long as Plaintiffs remained in the HAMP trial program.  CITI, however, did not perform the promised act.

54.     CITI's promise to provide BLANKENCHIP a permanent loan modification and to not sell the property was made both in writing and by oral representations by CITI's authorized representatives.  Said promises were contained within the June 13, 2011 Agreement and document entitled "Important Program Info". (Exhibits A and B).   Furthermore, in conversations between BLANKENCHIP and CITI representative Mahogany Burris, the same and similar promises were made.

55.     CITI did not intend on performing these promises when CITI made them as evidenced by CITI's representations and actions which included, but were not limited to, proceeding with having a notice of default issued and recorded on August 5, 2011 which was only days after the second of three trial period plan payments were made.  Similarly, CITI sent a correspondence to BLANKENCHIP on November 3, 2011 stating that they had until December 5, 2011 to submit certain documents to CITI, yet CITI proceeded with the foreclosure sale only seven days later.

56.     CITI intended on BLANKENCHIP relying on the promise and therefore sent a Trial Plan Agreement for them to execute which reflected the monthly payment amount to be $2,758.05.

57.   BLANKENCHIP reasonably relied on the promise that if they successfully completed the Trial Plan, including making three timely payments of $2,758.05, they would be given a permanent loan modification.

58.   CITI breached their contractual obligations and failed to perform the promised act by selling the Subject Property at a foreclosure auction on November 10, 2011.

59.   As a direct result of CITI's false promises and failure to perform the promised acts, BLANKENCHIP have been harmed as their home has been sold at a foreclosure sale; they have been evicted from the property; their credit rating has been destroyed; BLANKENCHIP did not act upon any other options which were available to them to prevent the property from being sold at a foreclosure auction; and they have incurred out of pocket expenses in an amount to be proven at trial.

60.   BLANKENCHIP reasonably relied upon CITI's promise that they would be given a permanent loan modification upon their successful completion of the Trial Plan.  Their reliance upon CITI's promise was a substantial factor in causing all of the damages and harm described in the preceding paragraphs.

**WHEREFORE**, BLANKENCHIP seeks damages according to proof at the time of trial as against CITI and DOES 1 through 50, for the loss of their home, damage to credit, and for the out of pocket losses incurred in connection with the sale of the home and subsequent eviction, as well as for punitive damages, and for other damages as set forth below.

## SIXTH CAUSE OF ACTION
### Unlawful Business Practices in Violation of Bus. & Prof. Code §17200, et seq.

61.   BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1 through 60, above, as though fully set forth herein.

62.    BLANKENCHIP alleges that the unlawful acts and practices of CITI alleged herein constitute unlawful, unfair and/or fraudulent business practices within the meaning of California Business and Professions Code §17200, et seq.

63.    Unlawfulness: As alleged above, CITI, fraudulently and willfully deceived BLANKENCHIP by making a false promise that CITI did not intend to perform. Furthermore, CITI has breached its obligations under the Agreement by failing to honor the terms of the contract and selling the subject property at a foreclosure auction.  These activities which CITI has engaged in are unlawful business practices.

64.    Unfairness: The totality of CITI's conduct was inherently unfair to BLANKENCHIP. CITI's breach of the contract, failure to perform on promised acts, and making false promises are unfair as they are against public policy.  CITI's selling of the subject property while BLANKENCHIP remained in the HAMP trial program, as well as the other conduct set forth throughout this complaint, was immoral, unethical, oppressive, unscrupulous and substantially injurious to BLANKENCHIP, specifically, and consumers in general. Additionally, CITI's conduct as described throughout this Complaint was unfair in that the negative impact on BLANKENCHIP (as described above) far outweighs any benefit to CITI.

65.    Fraud: As described above, CITI, by and through its agents, employees, and/or representatives, including, but not limited Cal-Western, misrepresented its intent to grant BLANKENCHIP a permanent loan modification upon their successful completion of the Trial Plan by and through CITI's false promise.  Said false promise includes, but is not limited to the promise that BLANKENCHIP would be given a permanent modification upon their successful completion of the HAMP trial program and that the Subject Property would not be sold while

Plaintiffs remained within the program. CITI's conduct was fraudulent and in violation of Cal. Bus. & Prof. Code §17200.

66. Fraudulent Scheme: CITI, through a series of intentional acts and general misrepresentations, including the false promise to modify monthly payments, have led BLANKENCHIP through an impossibly complicated and fraudulently concealed scheme aimed at increasing servicing fees and costs to the benefit of CITI and to the detriment of BLANKENCHIP. BLANKENCHIP has been damaged in many ways including, but not limited to, the following: BLANKENCHIP have lost their home to a foreclosure sale; have been evicted from their home; have had their credit rating destroyed; in reliance upon CITI's representations and promises, BLANKENCHIP did not act upon any other options which would have allowed them to prevent losing their home at foreclosure sale; and have incurred significant out of pocket expenses. CITI performed the above referenced acts with actual knowledge of or the reckless disregard for the truth because the system implemented by CITI itself was designed to fail the borrower in the modification process. The true success of the system was and is the goal of increased profit through servicing. On information and belief, CITI increases their profits in servicing the Subject Loan by employing methods designed at stringing out the modification process.

67. Further CITI has acted in a manner that is both wrongful and likely to mislead members of the general public in their actions regarding BLANKENCHIP's loan modification.

68. As a result of CITI's unlawful, unfair and fraudulent conduct, BLANKENCHIP has suffered and continues to suffer damages and injuries in an amount subject to proof at trial.

69. BLANKENCHIP seeks restitution and disgorgement based on fees associated with, but not limited to late fees and penalties incurred with servicing the subject loan, and such other

relief afforded under Cal. Bus. & Prof. Code §17200, et seq. as the Court may deem just and proper.

70.     BLANKENCHIP has standing, under Cal. Bus. & Prof. Code §17200, et seq., to seek discouragement of profits obtained by CITI through it unlawful, unjust, and/or fraudulent conduct.  Similarly, BLANKENCHIP has standing, under Cal. Bus. & Prof. Code §17200, et seq., to seek discouragement of property for actual losses should she lose her home.

**WHEREFORE**, BLANKENCHIP seeks damages according to proof at the time of trial as against CITI and DOES 1 through 50 as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

71.     BLANKENCHIP incorporates by reference all allegations set forth in paragraphs 1 through 70, above, as though fully set forth herein.

72.     CITI has sold BLANKENCHIP's home at a foreclosure auction that occurred on November 10, 2011.  This is the case despite CITI having promised to not sell the property while BLANKENCHIP remained in the HAMP trial program and to provide a permanent modification upon Plaintiffs' successful completion of the trial period program.

73.     By proceeding with the foreclosure sale on BLANKENCHIP's home, despite their promise not to, CITI has acted in a manner which constitutes extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing BLANKENCHIP's emotional distress.  CITI was aware that BLANKENCHIP strongly wished to retain the Subject Property. CITI was also very well aware of her fragile emotional state Plaintiffs were in as a result of their very significant difficult financial situation which led BLANKENCHIP to seek a loan modification from CITI in the first place.  Nevertheless, CITI breached its promises and contractual obligations and sold their home.

74.    BLANKENCHIP did, in fact, suffer extreme and/or severe emotional distress including complications related to inability to sleep; inability to concentrate at work; feeling of helplessness and inability to care and protect their family; headaches; and overall extreme anxiety and nervousness, as well as other physical ailments.   Moreover, BLANKENCHIP continues to suffer from anxiety, depression, sleeplessness, and extreme stress as they continue to have to deal with the consequences and ramifications of CITI's acts and behavior.   Each occasion in which BLANKENCHIP has to think about losing their home and reliving the events that transpired, including during the prosecution of this litigation, those wounds are reopened and Plaintiffs are forced to deal with the extreme emotional distress all over again.   As such the emotional distress being suffered by Plaintiffs in continuing and ongoing through today.

75.    CITI's extreme and outrageous conduct was the actual and proximate cause of BLANKENCHIP's extreme and/or severe emotional distress as it started and continues at or near the time of the events described herein.

76.    CITI's conduct exceeded all bounds of decency in a civilized society.   Specifically, CITI sold the Subject Property at a foreclosure auction, which resulted in BLANKENCHIP being evicted from their home, despite CITI promising to provide them a permanent loan modification upon Plaintiffs successful completion of the HAMP trial program and CITI's promise to not sell the property during the time in which Plaintiffs were in the program. CITI's conduct was not only extreme and outrageous, it was illegal and calculated to completely deprive BLANKENCHIP of their ownership interest in the Subject Property.

**Continuing Wrong**

77.    CITI's outrageous behavior was not limited to their selling of the Subject Property at a trustee's auction despite the Blankenchips having fully preformed all terms required of

Plaintiffs under the TTP. CITI's wrongful conduct continued to date as CITI has yet to stop wrongfully reporting erroneous information to the credit reporting agencies related to Blankenchips having been foreclosed upon. Again, but for CITI's tortious conduct, the Blankenchips would have been provided a permanent loan modification that would have allowed them to retain their home. Nevertheless, CITI continues to report the foreclosure to the credit agencies, month and month out. The result being the Blankenchips' credit rating and credit history has been, and continues to be, degraded.

78.     As a result of CITI's extreme and outrageous conduct, BLANKENCHIP is entitled to compensatory damages sufficient to make her whole for the extreme and severe emotional distress she has suffered.

79.     CITI has acted fraudulently, maliciously and oppressively with a conscious, reckless, and willful disregard, and/or with callous disregard, of the probable emotional and psychical consequences to BLANKENCHIP, and with knowledge that its conduct was substantially certain to vex, annoy, and injure BLANKENCHIP.  BLANKENCHIP is therefore entitled to punitive damages under California Civil Code §3294, in an amount sufficient to punish or make an example of CITI.

**WHEREFORE**, BLANKENCHIP seeks damages according to proof at the time of trial as against Defendants, and each of them, as hereinafter set forth.

**WHEREFORE**, Plaintiff prays judgment as follows:
**AS TO THE FIRST THROUGH FOURTH CAUSES OF ACTION:**

      a.   For compensatory damages according to proof at the time of trial;

      b.   For special damages according to proof at the time of trial;

      c.   For general damages according to proof at the time of trial;

d.   For the benefits promised to Plaintiff, including but not limited to, the set aside of the illegal and invalid sale, and the Trial Plan Modification Agreement attached hereto as Exhibit A which CITI has wrongfully breached;

e.   For attorney fees pursuant to the Note and Deed of Trust.

**AS TO THE FIFTH AND SEVENTH CAUSE OF ACTION:**

a.   For punitive damages in an amount sufficient to punish or make an example of CITI.

b.   For special damages according to proof at the time of trial;

c.   For general damages according to proof at the time of trial;

**AS TO THE SIXTH CAUSE OF ACTION:**

a.   For compensatory damages according to proof at the time of trial;

b.   For special damages according to proof at the time of trial;

c.   For general damages according to proof at the time of trial;

d.   For punitive damages according to proof at the time of trial;

e.   For attorney's fees and costs of this action pursuant to Business & Professions Code §17200 et seq.;

**AS TO ALL CAUSES OF ACTION:**

a.   For any prejudgment or other interest according to law; and

b.   For such other relief as the Court deems just and proper.

DATED:  December 12, 2014                    **UNITED LAW CENTER**
A Professional Law Corporation

/s/ Andre M. Chernay

By: _____

ANDRE M. CHERNAY,
Attorney for Plaintiffs

20

**<u>BLANKENCHIP V. CITIMORTGAGE, INC. et al.</u>**
**United States District Court – Eastern District – Sacramento Division**
**CASE NO.:  2:14-cv-02309-WSB-AC**


# <u>CERTIFICATE OF SERVICE</u>


**I, Kassandra Montgomery, certify and declare as follows:**

I am over the age of 18 years and not a party to this action.

My business address is, 3013 Douglas Blvd., Suite 200, Roseville, California, 95661.

This **FIRST AMENDED COMPLAINT** filed through the ECF system was previously sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the 12th day of December 2014.

I declare under penalty of perjury that the foregoing is true and correct.


UNITED LAW CENTER
A Professional Law Corporation


By:  _____/S/ Kassandra Montgomery_____
Kassandra Montgomery, Paralegal

# EXHIBIT A



**HELPING YOU STAY IN YOUR HOME.**

MAKING HOME AFFORDABLE℠

*You may be able to make your payments more affordable.*
### Act now to get the help you need!



June 13, 2011

Randy D Blankenchip
Susan C Blankenchip
229 Lawler Ranch Pkwy
Suisun City CA 94585-3765

> **1st Trial Payment Due: 7/1/11**
> **Loan number: 0652957566**

*[handwritten:] TAMARA - 6/28-11*
*KAY - 6/28-11*
*Armand - 6/28/11*
*GARY - 6/28/11 - ID#*

Dear Randy D Blankenchip and Susan C Blankenchip,

**Congratulations!** You are approved to enter into a trial period plan under the Home Affordable Modification Program. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

**What you need to do...**
To accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following trial period payments in a timely manner:

*[handwritten: PAID ON 1+2 - FORECLOSED BEFORE TIME - PAYMENT ON 3RD IT WAS PAID]*

    1st payment:    $2,758.05 by 7/1/11 — *[handwritten: 1ST WEEK]*
    2nd payment:   $2,758.05 by 8/1/11
    3rd payment:   $2,758.05 by 9/1/11

After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) **If each payment is not received by CitiMortgage, Inc. in the month in which it is due, this offer will end and your loan will not be modified under the Making Home Affordable Program.**

If you have any questions or if you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home but still want to avoid foreclosure, please call us at 1-866-272-4749 as we may be able to help you. (Also, please review the attached "Frequently Asked Questions.") *[handwritten: 10:30 Am 6/28]*

*[handwritten: HUD (800) 569 4287]*

Sincerely,

*[handwritten: 800 569-4287]*

CitiMortgage Customer Service

The *Making Home Affordable* program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

*Attachments: (1) Frequently Asked Questions; (2) Additional Trial Period Plan Information and Legal Notices;*

742070

209943 HAM384.1 1079

# EXHIBIT B

## Additional Trial Period Plan Information and Legal Notices

The terms of your trial period plan below are effective on the day you make your first trial period payment, provided you have paid it on or before 7/1/11. You and we agree that:

**We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you are notified in writing that you failed to comply with the terms of the trial period plan or do not qualify for a permanent modification.

- You agree that the servicer will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that the servicer will not pay your interest on the amounts held in the account. If any money is left in this account at the end of the trial period plan, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.

- The servicer's acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:**

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

**Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required under your loan documents:**

- You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

# EXHIBIT C





November 3, 2011

Randy D Blankenchip
Susan C Blankenchip
229 Lawler Ranch Pkwy
Suisun City CA 94585-3765

## URGENT NOTICE.

### Your documents must be returned by
### 12/5/2011.

Dear Randy D Blankenchip and Susan C Blankenchip,

The deadline for you to return the required documentation for the Home Affordable Modification Program has been extended. The new deadline to return your information is 12/5/2011.

## WE MUST HAVE THE DOCUMENTS LISTED BELOW TO LOWER YOUR MORTGAGE PAYMENTS THROUGH THIS PROGRAM.

- Most recent personal checking, savings, money market, mutual funds, stock and bond statements.
- Copies of the two (2) most recent pay stubs indicating year-to-date earnings including from secondary income.

*Loss mitigation outcome -All* *(handwritten)*

**This deadline is real – don't risk being dropped from the program.**
You are at risk and will be removed from the program if we do not receive your documents by the deadline. If you are removed, you will be required to pay your full mortgage payment and all past due amounts.

If you have already sent the documents listed above, you have the opportunity to correct any errors; however, you must provide the necessary items by 12/5/2011. If you have already sent the information, please call us at 1-855-843-2549¹ ext. O480077 Monday - Thursday 7AM-8PM (CT), Friday 7AM-6PM (CT), Saturday 7AM-4PM (CT)* or email at mahogany.d.burris@citi.com**.

## DON'T WAIT!

**Please return your documents in the enclosed return envelope today.**

Sincerely,

Mahogany Burris

Homeowner Support Specialist

Account #: 0652957566

Questions? Call 1-855-843-2549¹ ext. O480077

Fax Your Information To: 1-866-641-4350

Mail Your Information To:
CitiMortgage HAM Program
1000 Technology Drive, MS420
O'Fallon, MO 63368

858565        226875 UNOPS.SPOC 1S23

# EXHIBIT D

Recorded in Official Records, Solano County

11/30/2011
3:27 PM
AR51
22

WHEN RECORDED MAIL TO:

**Marc C. Tonnesen**
Assessor/Recorder

BLUE MOUNTAIN HOMES, LLC
707 ALDRIDGE RD
SUITE B
VACAVILLE, CA 95688

**P  BLUE MOUNTAIN**



TRA #    005025
Trust No. 1320993-10

Doc#:  **201100108154**

| Titles:  1 | Pages:  2 |
|---|---|
| Fees | 16.00 |
| Taxes | 239.25 |
| Other | 9.00 |
| PAID | $264.25 |

---

MAIL TAX STATEMENT TO:

Same as above

Space Above This Line For Recorder
Documentary Transfer Tax $239.25
_X_ Grantee was not the foreclosing beneficiary.
consideration $217,100.00
unpaid debt $447,673.09
non exempt amount $
___Computed on the consideration or value of
property conveyed
___Computed on the consideration of value less
liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent. GEORGE LAZO
AP# 0173-790-420

1st Position

## TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**POLYMATHIC PROPERTIES, INC** (herein called Grantee) the real property in the county of SOLANO,
State of California described as follows:

LOT 4 AS SHOWN ON THAT CERTAIN MAP ENTITLED LAWLER RANCH UNIT 7, ON JUNE 9,
1995, IN BOOK 65 OF MAPS, AT PAGE 61.
The street address and other common designation, if any, of the real property described above is purported to be:
**229 LAWLER RANCH PARKWAY**
**SUISUN CITY, CA  94585**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
RANDY D. BLANKENCHIP AND SUSAN C. BLANKENCHIP, HUSBAND AND WIFE AS JOINT
TENANTS as Trustor, recorded June 01, 2006, as Document No. 200600069300, in Book XX, page XX, of
Official Records in the Office of the Recorder of SOLANO County, California; and pursuant to the Notice of
Default recorded May 04, 2011, as Document No. 201100038861 in Book XX, page XX of Official Records of
said County, Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of
copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the
notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

TDUSCA.DOC

Page 1 of 2

TRA #   005025
Trust No. 1320993-10

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **November 10, 2011** to said Grantee, being the highest bidder therefore, for **$217,100.00** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

CAL-WESTERN RECONVEYANCE CORPORATION

Dated:  November 21, 2011

Susan Smothers, A.V.P.

State of California )
County of San Diego)

On _11-22-11_ before me, __Mary J. Statham__
a Notary Public, personally appeared ___Susan Smothers, A.V.P___, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                    (Seal)

Signature _____

> MARY J. STATHAM
> Commission # 1893436
> Notary Public - California
> San Diego County
> My Comm. Expires Jun 21, 2014

TDUSCA.DOC



Page 2 of 2