1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RANDY BLANKENCHIP, et al.,                  No.  2:14-cv-2309 WBS AC

12                    Plaintiffs,

13        v.                                      ORDER

14   CITIMORTGAGE, INC., et al.,

15                    Defendants.

16

17        Pending before the court is defendant CitiMortgage Inc.'s ("defendant") motion for a

18   protective order excusing it entirely from producing certain documents.  For the reasons set forth

19   below, the court will deny the motion.

20                                  I.  BACKGROUND

21        This is a removed action, under the court's diversity jurisdiction, alleging that defendant

22   breached a loan modification agreement and wrongfully foreclosed on plaintiffs' home.

23   According to the complaint, defendant agreed to consider a loan modification for plaintiffs.  It

24   agreed not to foreclose during the period plaintiffs were under consideration, so long as plaintiffs

25   made payments under the modification program.  Plaintiffs made all timely payments under the

26   program, but defendant foreclosed and sold their property anyway, while plaintiffs were still

27   ////

28   ////

1

1   under consideration for a loan modification.[1]

2       On defendant's motion to dismiss, the district judge assigned to this case dismissed only

3   the claim for intentional infliction of emotional distress.  See Order re Motion To Dismiss, ECF

4   No. 10.  The surviving claims in the case, all under state law, are for (1) wrongful foreclosure,

5   (2) breach of contract and the implied covenant of good faith and fair dealing, (3) promissory

6   estoppel, (4) fraud and (5) unfair competition.

7                              II.  THE DISCOVERY DISPUTE

8       A.  Procedural History

9       On April 20, 2015, plaintiffs served on defendant a Notice of Deposition of defendant's

10  custodian of records.  See Joint Statement (ECF No. 27-1) at 17-27 ("Exhibit A").  The deposition

11  and document production were scheduled for July 15, 2015. Id. at 17.  The Notice of Deposition

12  asserts that it is being taken "Pursuant to Code of Civil Procedure Sections 2025.010, et seq."  Id.

13      Of course, "[a] district court sitting in a diversity case applies federal procedural law and

14  state substantive law."  Hamm v. American Home Products Corp., 888 F. Supp. 1037, 1038 (E.D.

15  Cal. 1995) (Shubb, J.) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)).  As such, this

16  discovery dispute is governed by Rules 26-37 of the Federal Rules of Civil Procedure, not by the

17  California Code of Civil Procedure.  Thus, plaintiffs have, in essence, served defendant with

18  notice of a Fed. R. Civ. P.  ("Rule") 30(b)(6) deposition, since it is directed to an organization.  In

19  addition, plaintiffs' document request is governed by Rule 34.

20      After the document request was served, defendant had 30 days – until May 20, 2015 – to

21  respond.  Rule 34(b)(2)(A).[2]  Defendant was required to respond to each requested item, stating

22  either that it would be produced, or stating an objection "including the reasons."

23  Rule 34(b)(2)(B).[3]  Defendant did not bother complying with this requirement before filing its

24

25

26  [1]  Of course, the court expresses no opinion on whether this conduct actually occurred.  At this
    point, the court proceeds on basis of the allegations in the complaint.

27  [2]  Even if the parties thought they were proceeding under California rules, defendant had the same
    30 days to respond.  See Cal. Code Civ. P. § 2031.260(a).

28  [3]  The same is true under California rules.  See Cal. Code Civ. P. § 2031.210.

1     motion in court.[4]

2          Defendant now asks the court to excuse it from producing *any* documents responsive to

3     requests 2, 3, 6, 14-19 and 21-27.

4          B.  The Disputed Discovery Requests

5          Plaintiffs seek the following documents:[5]

6               2 & 3.  The underwriting standards of CitiMortgage for modification review under

7     the Home Affordable Modification Program ("HAMP"), as it relates to plaintiff (written or not).

8               6.  Polices and procedures relating to its policies and procedures relating to

9     documenting or otherwise acknowledging receipt of documents submitted in support of a loan

10    modification application.

11              14.  Policies, practices and procedures with respect to "proceeding to foreclosure

12    sale of a property that is in active loan modification application review."

13              15 & 16.  Servicing fees & and all other charges CitiMortgage received regarding

14    the property.

15              17 & 18.  Credits, refunds, reimbursements and monies received by CitiMortgage

16    from the sales proceeds of the property, and policies practices and procedures relating to these.

17              19.  HAMP guidelines pertaining or related to foreclosure sales while a property is

18    in HAMP loan review.

19              21.  Pooling and servicing agreements applicable to the loan at issue, 2009 to the

20    present.

21    _____

22    [4]  This is a problem for the court, even if plaintiff chooses not to raise the issue.  Normally,
      discovery is conducted in private, between the parties.  Accord, Seattle Times Co. v. Rhinehart,
23    467 U.S. 20, 33 (1984) (in general, discovery is "conducted in private as a matter of modern
      practice").  It is not conducted in court.  The parties should come to court only after they have
24    complied with the discovery rules and the rules of this court and still have been unable to resolve
      a discovery dispute.  Those rules are designed, at least in part, to get discovery disputes resolved
25    out of court.  See, e.g., Fed. R. Civ. P. 26(c)(1) (parties must meet and confer before seeking a
      protective order), 26(b)(5)(A)(ii) (requirement of detailed privilege log), 33(b)(3) (objections to
26    *each* interrogatory must be stated "with specificity" or be waived), 34(b)(2)(A) (objections to
      *each* item or category of documents must be stated, "including the reason").  Federal court is not
27    the first place to go when a problem arises in discovery, it is the last.
      [5]  See ECF No. 27-1 at 23-25.
28
                                              3

1    22.  Investor guidelines applicable to the loan at issue, 2009 to the present.

2    23.  Fees and costs charged to the loan, 2009 to the present.

3    24.  The amount CitiMortgage received for servicing the loan, 2009 to the present.

4    25.  Policies and procedures relating to CitiMortgage's acceptance of loan

5  modification offers.

6    26.  Policies and procedures relating to notifying borrowers, including plaintiff, of

7  its determination of the loan modification application reviews.

8    27.  Document retention policies, 2009 to the present.

9    C.  Meet and Confer

10    On June 9, 2015, defendant initiated a "meet and confer" with plaintiffs, and followed up

11  with a letter on June 15, 2015, asserting that it has "issues with some of plaintiffs' document

12  requests."  ECF No. 27-2 at 18-20.[6]  In the letter, defendant relied heavily on plainly inapplicable

13  state discovery rules and equally inapplicable regulations under the Real Estate Settlement

14  Procedures Act ("RESPA").  Defendant advised plaintiffs that if they did not withdraw the

15  request, defendant would seek a protective order.  Id. at 20.

16    There is no evidence that defendant ever sought a less drastic stipulated protective order,

17  such as an order that would permit disclosure only in the context of this litigation, and that would

18  prevent use of the documents or information outside of the litigation.  Instead, the only protective

19  order defendant ever sought was a complete ban on any production of the identified categories of

20  documents.[7]

21

22  _____

[6]  In the letter, defendant asserted that requests 30-32 sought information "in violation of Citi's privacy rights" under California law.  Id. at 18.  However, defendant does not seek a protective

23  order for these documents, so the court will not consider these requests further.

[7]  Defendant does so even though the Ninth Circuit cases it cites contemplate that a protective

24  order will only restrict or prevent public dissemination of the discovery (or impose other terms), rather than block its disclosure to the requesting party entirely.  See Sega Enterprises Ltd. v.

25  Accolade, Inc., 977 F.2d 1510, 1532 (9th Cir. 1992) ("[u]pon a showing that a protective order is warranted, the court may restrict access to the disputed material to the opposing party's counsel,

26  or may allow the parties to retain independent experts to evaluate material that is subject to the protective order"); Penk v. Oregon State Bd. of Higher Educ., 816 F.2d 458, 468 (9th Cir.)

27  (noting that "the court may order that discovery may be had only on specified terms and

28  conditions") (internal quotation marks omitted), cert. denied, 484 U.S. 853 (1987).

4

1               II.  ANALYSIS

2         Pursuant to Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause,

3  issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue

4  burden or expense."  The party seeking the protective order has the burden "to 'show good cause'

5  by demonstrating harm or prejudice that will result from the discovery."  Rivera v. NIBCO, Inc.,

6  364 F.3d 1057, 1063 (9th Cir. 2004) (granting plaintiff a protective order from discovery

7  requested by defendant, which inquired into plaintiff's immigration status), cert. denied, 544 U.S.

8  905 (2005).  Generalized statements of harm are not good enough.  Rather, "[t]he party opposing

9  disclosure has the burden of proving 'good cause,' which requires a showing 'that specific

10  prejudice or harm will result' if the protective order is not granted."  Father M v. Various Tort

11  Claimants (In re Roman Catholic Archbishop of Portland in Oregon), 661 F.3d 417, 424 (9th

12  Cir. 2011) (quoting Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th

13  Cir. 2003)), cert. denied, 132 S. Ct. 1867 (2012).  "'If a court finds particularized harm will result

14  from disclosure of information to the public, then it balances the public and private interests to

15  decide whether a protective order is necessary.'"  Rivera, 364 F.3d at 1063-64 (quoting Phillips

16  ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002)).  In addition to

17  "limiting the scope of discovery, or fixing the terms of disclosure," the protective order may

18  "prohibit[] the requested discovery altogether."  Id. at 1063.

19         A.  Relevance

20         Defendant does not explain why the asserted lack of relevance of the requested documents

21  would subject it to "annoyance, embarrassment, oppression, or undue burden or expense," the

22  only grounds for granting a protective order.  See Rule 26(c)(1).  Nothing in Rule 26(c)(1), by its

23  own express terms, authorizes a court to issue a protective order seeking documents from a party

24  on the grounds that the documents are not relevant.  However, the undersigned acknowledges the

25  case law opining that the requirement to produce entirely irrelevant documents or information –

26  especially if the request appears to be a mere "fishing expedition" – is an "undue burden" on a

27  party.  See, e.g., Carrera v. First American Home Buyers Protection Co., 2014 WL 3695403 at *1,

28  2014 U.S. Dist. LEXIS 101064 (S.D. Cal. 2014) ("'The compulsion of production of irrelevant

1   information is an inherently undue burden' for which a protective order may issue") (quoting

2   Jimenez v. City of Chicago, 733 F. Supp. 2d 1268, 1270 (W.D. Wash. 2010));[8] Knapp v. Cate,

3   2012 WL 2912254, 2012 U.S. Dist. LEXIS 98454 (E.D. Cal. 2012) (granting defendant a

4   protective order from plaintiff's excessive number of requests for admissions), motion for relief

5   denied, 2012 WL 5309132, 2012 U.S. Dist. LEXIS 154856; Newman v. San Joaquin Delta

6   Community College Dist., 2011 WL 1743686 at *3, 2011 U.S. Dist. LEXIS 52714 (E.D.

7   Cal. 2011) ("It is apparent to the undersigned that plaintiffs simply wish to rummage around in

8   Ruley's present employment in furtherance of an unfocused fishing expedition.  Given plaintiffs'

9   apparent aims, a protective order is warranted to protected Ruley from annoyance,

10   embarrassment, oppression, and undue burden.") (footnote omitted).

11          The court need not determine whether a protective order may be obtained solely on the

12   basis of irrelevance, because plaintiff seeks documents that are plainly relevant, and are designed

13   to lead to the discovery of admissible evidence.

14                          1. Policy and procedure documents, including underwriting standards

15          Plaintiffs allege that defendant sent them loan modification documents, which they

16   completed and returned.  Defendant then offered them a loan modification, contingent only upon

17   their making three timely payments during the "trial period," and submitting all required

18   documents (which were not specified).  Plaintiffs timely made all three required payments, on

19   July 1, August 1 and September 1, 2011.[9]  Nevertheless, on August 5, 2011, defendant recorded a

20   notice of trustee's sale for August 25, 2011.  Plaintiffs continued to make timely payments under

21   the trial period, never having heard from defendant about the promised permanent loan

22   modification.  In October 2011, defendant told plaintiffs the sale date was now November 10,

23   2011.  Inexplicably, defendant then wrote to plaintiffs on November 3, 2011, saying the deadline

24   for them to submit documents was December 5, 2011, and urging them to pay attention to that

25   [8]  However, Carrera relies exclusively on cases in which the protective order was sought by non-
26   parties.  See Jimenez (granting protective order to protect non-party from subpoena); Monte H.
    Greenawalt Revocable Trust v. Brown, 2013 WL 6844760 (D. Nev. 2013) (same, although the
27   motion was made by defendant); Ginena v. Alaska Airlines, Inc., 2011 WL 4749104 (D.
    Nev. 2011) (same).
28   [9]  Defendant, in its Answer, denies that it received any of the three payments on time.

1   deadline so they wouldn't "risk being dropped from the program." Then, without waiting for the

2   requested documents, defendant completed the foreclosure sale on schedule, November 10, 2011.

3          Plaintiffs are entitled to discover defendant's policies and practices so that they can learn

4   whether this bizarre behavior was the result of defendant's policies and procedures, or, for

5   example, resulted from the actions of a rogue employee. Plaintiff's litigation and settlement

6   strategy will most likely turn on whether this conduct was done pursuant to policy, or contrary to

7   policy. Further, plaintiffs will have a much easier time convincing the fact-finder that this

8   conduct actually occurred, if defendant's policies and procedures allow for it. Moreover,

9   plaintiffs' litigation and settlement strategy would be affected if the discovery showed that

10   defendant told its clients (the investors for whom it was servicing the mortgage) that it was

11   servicing the loan one way, but the policies and procedures showed that it was servicing the loan

12   in a different way.

13          Without knowing what defendant's policies and practices are, it is impossible for plaintiffs

14   to know what was really happening to them. After all, the promise defendant made to them was

15   apparently iron-clad. It did not say that if plaintiffs made these payments, then defendant would

16   consider modifying their loan. Rather, it said (as defendant admits), that if plaintiffs made the

17   payments, and submitted the required documents, their mortgage "will be permanently modified."

18   Since plaintiffs allege that they made all the timely payments and submitted all the required

19   documents (or were foreclosed before the deadline for submission of the documents), and

20   defendant denies wrongdoing, plaintiffs are entitled to know how this could happen.

21          Also, plaintiffs are alleging fraud and unfair business practices. Defendant's relevance

22   arguments do not touch upon these claims.

23                    2.  Money received by defendant from its wrongdoing (fees, etc.)

24          This is relevant to plaintiffs' case. At a minimum, this may inform whether plaintiff is

25   entitled to punitive damages. See Johnson v. Ford Motor Co., 35 Cal. 4th 1191, 1208 (2005)

26   ("Removal of any profits the defendant has earned by a wrongful act is a logical step toward

27   deterring its repetition or imitation. A gain-based measure of this sort sends a clear signal to

28   defendants that such misconduct does not pay and, thus, serves the deterrent function of punitive

                                          7

1    damages.") (internal quotation marks omitted).

2                    3.  Pooling and servicing agreements

3          The pooling and servicing agreement is the agreement that permits defendant to service

4    the loan, and governs how it will do so.  This is also relevant to plaintiffs' case.  Plaintiffs are

5    entitled to see how defendant was supposed to service the loan.  If defendant was authorized by

6    the agreement to do what it did – make an ironclad promise and then break it – then that's

7    relevant to the breach of contract, fraud and unfair business practices claims, and to punitive

8    damages.  Also, plaintiffs are entitled to discover if defendant was required by its pooling and

9    servicing agreement to proceed one way, but then proceeded contrary to that agreement when it

10   foreclosed on plaintiffs' home.[10]

11         B.  Confidentiality and Privacy

12         If, as it appears, the documents sought are relevant, then defendant's confidentiality

13   concerns can be addressed with a protective order that permits disclosure to plaintiffs while

14   preventing disclosure to anyone else.  The cases defendant cites do not support its assertion that

15   plaintiffs should be denied all access to the identified categories of documents.

16         In Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1209 (9th

17   Cir. 2002), a newspaper intervened in a case in order to get access to settlement documents.  It

18   was not seeking access to documents of a party-opponent so that it could sensibly conduct its own

19   litigation.  A protective order already shielded the documents from disclosure.  The Ninth Circuit

20   remanded to the district court to conduct an analysis of whether "good cause" existed to lift the

21   protective order and make the documents available to the general public.  Unlike the newspaper

22   in Phillips, plaintiffs here do not seek to make these documents public, they want to use them in

23   the litigation, and they are not seeking to lift an already-existing protective order.

24         In Wallman v. Tower Air, Inc., 189 F.R.D. 566 (N.D. Cal. 1999), plaintiff sought access

25   to an airline passenger list whose confidentiality was protected by federal statute.  Nevertheless,

26   the magistrate judge ordered defendant to "produce the passenger list," and also ordered the

27   _____

28   [10]  The document retention policy may help plaintiffs understand any gaps in the document
     production, and therefore it is also relevant.

                                          8

1   parties to submit a stipulated protective order to protect the passengers' privacy.

2       In Compaq Computer Corp. v. Packard Bell Electronics, Inc., 163 F.R.D. 329, 340 (N.D.

3   Cal. 1995), a party sought documents containing trade secrets from a non-party.  The magistrate

4   judge ordered the documents produced under a protective order.

5       C.  Privilege

6       If defendant claims "privilege" of some kind – at this point the court cannot tell if it does

7   or does not – it is required to expressly claim the privilege, Rule 26(b)(5)(A)(i), and then produce

8   a privilege log containing all the information required by Rule 26(b)(5)(A)(ii).

9                                III.  CONCLUSION

10      For the reasons stated above, IT IS HEREBY ORDERED THAT:

11      1.  Defendant's Motion for Protective Order (ECF No. 27) is DENIED;

12      2.  The court understands that the parties contemplate meeting and conferring again to

13  craft a stipulated protective order.  If these efforts fail, the parties are advised that if they think it

14  appropriate, they may utilize the undersigned's procedure governing Informal Telephonic

15  Conferences re Discovery Disputes.[11]

16  DATED: August 20, 2015

17  _____
    ALLISON CLAIRE

18  UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26  _____
    [11]  The details of that informal procedure are set forth on the court's Web page.  See

27  http://www.caed.uscourts.gov/caednew/index.cfm/judges/all-judges/united-states-magistrate-judge-allison-claire-ac/

28

                                        9