UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RANDY BLANKENCHIP and SUSAN BLANKENCHIP,

               Plaintiffs,

    v.

CITIMORTGAGE, INC.; CAL-WESTERN RECONVEYANCE, LLC; and DOES 1-50, inclusive,

               Defendants.

CIV. NO. 2:14-02309 WBS AC

MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT

----oo0oo----

        Plaintiffs Randy and Susan Blankenchip initiated this suit against defendants CitiMortgage, Inc. ("Citi") and Cal-Western Reconveyance, LLC, alleging that defendants breached a loan modification agreement and wrongfully foreclosed on their home.  Presently before the court is Citi's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docket No. 72.)

I.   Factual and Procedural History

        Plaintiffs' allegations concern a residential mortgage loan they took out for their home in Suisun City, California.

1

1   (Blankenchip Decl. ¶ 6 (Docket No. 74-2); Cohoon Decl. Exs. 1-4

2   (Docket No. 72-3).)   The loan had an adjustable interest rate

3   that decreased from 6.625% to 3% on June 1, 2011.  (Cohoon Decl.

4   ¶ 13, Exs. 1, 4.)   Due to a reduction in their income, plaintiffs

5   struggled to maintain their monthly loan payments.  (Blankenchip

6   Decl. ¶¶ 10-11.)   In 2009, plaintiffs defaulted on their loan.

7   (Cohoon Decl. ¶ 12.)   A notice of default was issued on May 3,

8   2011 and Citi initiated foreclosure proceedings.  (Id. ¶¶ 16-17,

9   Ex. 6.)

10        In April 2011, in response to plaintiffs' request for a

11  loan modification, Citi sent plaintiffs a letter inviting them to

12  apply for a loan modification through the Home Affordable

13  Modification Program ("HAMP") by submitting forms and income

14  documentation.  (Cohoon Decl. ¶ 14; Blankenchip Decl. ¶ 12, Ex.

15  A.)   Plaintiffs submitted bank statements, pay stubs, a bonus

16  check, the HAMP Hardship Affidavit, and a signed IRS Form 4506T.

17  (Id. ¶¶ 15-16.)   On June 13, 2011, Citi sent plaintiffs a letter

18  notifying them that they were approved to enter into a trial

19  period plan ("TPP") under HAMP.  (Id. ¶ 20, Ex. G.)   The letter

20  explained that in order to accept this offer, plaintiffs must

21  make their first monthly trial period payment.  (Id.)   It further

22  explained that to qualify for a permanent modification,

23  plaintiffs must make three trial period payments of $2,758.08 "in

24  a timely manner."  (Id.)   The first payment was due by July 1,

25  2011, the second by August 1, 2011, and the third by September 1,

26  2011.  (Id.)   The TPP stated, "After all trial period payments

27  are timely made and you have submitted all the required

28  documents, your mortgage will be permanently modified."  (Id.)

2

1    Despite providing payment deadlines on the first of the

2    month, the same letter also provided that "[i]f each payment is

3    not received by CitiMortgage, Inc. in the month in which it is

4    due, this offer will end and your loan will not be modified under

5    the Making Home Affordable Program." (Id.)  A reminder letter

6    regarding plaintiffs' August TPP payment similarly stated: "If

7    you fail to make a Trial Payment by the last day of the month in

8    which it is due, you will be considered to have failed the trial

9    period and will not be eligible for a HAMP modification."

10   (Cohoon Decl. Ex. 13.)

11   The additional information attached to the offer letter

12   stated that the "terms of your trial period plan below are

13   effective on the day you make your first trial period payment,

14   provided you have paid it on or before 7/1/11." (Blankenchip

15   Decl. Ex. G.)  The terms stated that Citi would "not proceed to

16   foreclosure sale during the trial period, provided you are

17   complying with the terms of the trial plan." (Id.)  "Any pending

18   foreclosure action or proceeding that has been suspended may be

19   resumed if you are notified in writing that you failed to comply

20   with the terms of the trial period plan or do not qualify for a

21   permanent modification." (Id.)

22   Plaintiffs paid their trial period payments on July 15,

23   2011, August 11, 2011, and September 15, 2011. (Id. ¶¶ 23, 27,

24   33; Cohoon Decl. ¶¶ 29, 37, 41, Ex. 11 at 29-30.)  Plaintiffs

25   could not pay their TPP payments by the first of the month

26   because the exact days of the month on which Mr. Blankenchip gets

27   paid as the Managing Partner of a Texas Roadhouse restaurant vary

28

3

1    and he gets his bonus in the middle of the month.  (Blankenchip

2    Decl. ¶¶ 7-8, 21.)

3          On August 5, 2011, Citi issued and recorded a notice of

4    trustee's sale.  (Cohoon Decl. ¶ 33, Ex. 14.)  Citi postponed the

5    sale several times while plaintiffs were under review for both

6    the HAMP modification and a traditional modification.  (Id.

7    ¶¶ 35-36, Ex. 3, Servicing Notes at 48, 53-56, 60-62.)  On

8    September 12, 2011, Citi sent plaintiffs a letter stating that,

9    "[b]ecause you have not kept the terms of the Forbearance Plan

10   with us, we have cancelled it."  (Blankenchip Decl. Ex. M.)  Mr.

11   Blankenchip states that he called their assigned Homeowner

12   Support Specialist, Mahagony Burris, after receiving this letter

13   and she "told me not to worry about the September 12, 2011

14   letter, that CITI had received all three of my TPP payments and

15   that she would be working with other departments at CITI to get

16   the final modification documents together and sent out to me."

17   (Id. ¶ 37.)

18         On October 10, 2011, Citi contends it determined that

19   plaintiffs were ineligible for a permanent HAMP modification

20   because the interest rate on plaintiffs' loan would have

21   increased from 3% to 3.75% if their loan was modified.  (Cohoon

22   Decl. ¶ 43, Ex. 3, Servicing Notes at 48.)  Citi also determined

23   that plaintiffs did not qualify for a traditional loan

24   modification because of insufficient income.  (Id. ¶ 44, Ex. 3,

25   Servicing Notes at 42.)  Citi nonetheless initiated a re-review

26   of plaintiffs for a loan modification and requested updated

27   paystubs and an updated Workable Solutions Packet from plaintiffs

28   on October 14, 2011.  (Id. ¶¶ 45-47, Ex. 16.)  On November 3,

1    2011, Citi sent plaintiffs another letter stating that the

2    "deadline for you to return the required documentation for the

3    Home Affordable Modification Act has been extended" and

4    requesting that plaintiffs submit their documents by December 5,

5    2011.  (Id. Ex. 17.)  The letter explained that plaintiffs were

6    "at risk and will be removed from the program If [sic] we do not

7    receive your documents by the deadline."  (Id.)  Citi now

8    contends that this letter was issued and sent by Citi's vendor in

9    error.  (Id. ¶ 49; Citi's Mot. for Summ. J. ("Citi's Mot.") at 5

10   n.1 (Docket No. 72).)

11        On November 10, 2011, before the documents deadline had

12   passed, Citi conducted a nonjudicial foreclosure sale of

13   plaintiffs' home.  (Cohoon Decl. Ex. 18.)  Plaintiffs vacated the

14   house that month.  (Blankenchip Decl. ¶¶ 54-55.)

15        In their First Amended Complaint ("FAC"), plaintiffs

16   allege seven causes of action against defendants: (1) wrongful

17   foreclosure; (2) breach of contract; (3) promissory estoppel; (4)

18   breach of the implied covenant of good faith and fair dealing;

19   (5) fraud; (6) unlawful business practices in violation of

20   California Business Professions Code section 17200; and (7)

21   intentional infliction of emotional distress.  (FAC (Docket No.

22   11).)  On February 19, 2016, this court approved a stipulation

23   between Ms. Blankenchip and Citi dismissing with prejudice her

24   claim for intentional infliction of emotional distress and

25   agreeing that Citi will not be permitted to conduct any mental

26   examination of Ms. Blankenchip.  (Docket No. 49.)

27        Presently before the court is Citi's motion for summary

28   judgment on each of plaintiffs' claims.

1  II.  <u>Evidentiary Objections</u>

2          On a motion for summary judgment, "[a] party may object

3  that the material cited to support or dispute a fact cannot be

4  presented in a form that would be admissible in evidence."  Fed.

5  R. Civ. P. 56(c)(2).  Further, "[a]n affidavit or declaration

6  used to support or oppose a motion must be made on personal

7  knowledge, set out facts that would be admissible in evidence,

8  and show that the affiant or declarant is competent to testify on

9  the matters stated."  Id. R. 56(c)(4).

10          Citi raises forty-four evidentiary objections to

11  plaintiffs' evidence submitted in opposition to Citi's motion for

12  summary judgment.  (Citi's Evidentiary Objs. (Docket No. 78).)

13  Citi objects to portions of Mr. Blankenchip's declaration on the

14  grounds of hearsay, lack of personal knowledge, and the best

15  evidence rule; to plaintiffs' expert witness report and the

16  expert's deposition on the grounds that her opinion does not

17  qualify as admissible expert opinion and constitutes extrinsic

18  evidence that cannot modify the written TPP agreement under the

19  parol evidence rule; and to the HAMP and Freddie Mac guidelines

20  on the grounds that they are also extrinsic evidence that cannot

21  modify the written TPP agreement under the parol evidence rule.

22  (Id.)

23          As this court explained at length in Burch v. Regents

24  of the University of California, 433 F. Supp. 2d 1110 (E.D. Cal.

25  2006), "[a]s a practical matter, the court finds this entire

26  exercise of considering evidentiary objections on a motion for

27  summary judgment to be futile and counter-productive."  Id. at

28  1122.  Not only does deciding excessive numbers of objections

1   begin "to defeat the objectives of modern summary judgment

2   practice--namely, promoting judicial efficiency and avoiding

3   costly litigation," it is often difficult to address even

4   seemingly appropriate objections based on hearsay or failure to

5   authenticate "away from the dynamics of a trial," where "the

6   opposing party will have an opportunity to present the evidence

7   in an alternative and admissible form" or a question can be

8   rephrased if an objection is sustained.  Id.

9        Further, with respect to hearsay objections to evidence

10  submitted by the non-moving party, "the court cannot ignore the

11  fact that a non-movant in a summary judgment setting is not

12  attempting to prove its case, but instead seeks only to

13  demonstrate that a question of fact remains for trial."  Id. at

14  1121.  "Objections to the form in which the evidence is

15  presented" by a non-moving party "are particularly misguided."

16  Id. at 1119.  "As the Ninth Circuit has held, 'to survive summary

17  judgment, a party does not necessarily have to produce evidence

18  in a form that would be admissible at trial, as long as the party

19  satisfies the requirements of Federal Rules of Civil Procedure

20  56.'"  Id. at 1120 (citing Fraser v. Goodale, 342 F.3d 1032,

21  1036-37 (9th Cir. 2003)).  "In other words, when evidence is not

22  presented in an admissible form in the context of a motion for

23  summary judgment, but it may be presented in an admissible form

24  at trial, a court may still consider that evidence."  Id.

25       Citi filed an unruly number of evidentiary objections

26  with little explanation of the basis for each and, as the non-

27  moving party, plaintiffs are arguably entitled to more leniency.

28  Further, the record suggests that plaintiffs will be capable of

1  presenting their evidence in an admissible form at trial.  For

2  example, Citi objects to several paragraphs of Mr. Blankenchip's

3  declaration pursuant to the best evidence rule, arguing that his

4  description is inadmissible to prove the contents of letters sent

5  by Citi.  (See Citi's Evidentiary Objs. ¶¶ 1-4, 6, 9, 11-12, 15,

6  18, 22, 25, 27-28, 32-33.)  It is clear, however, from

7  plaintiffs' exhibits that they would be able to prove the

8  contents with copies of the letters themselves and this

9  evidentiary issue would be easily resolved at trial.  Similarly,

10  Citi objects to the portions of Mr. Blankenship's declaration in

11  which he describes statements made to him by Citi representatives

12  as hearsay.  (See id. ¶¶ 5, 8, 10, 13-14, 16, 17, 19-21, 23-24,

13  26, 29, 31, 34-35.)  First, these statements would likely be

14  admissible as admissions by a party-opponent under Federal Rule

15  of Evidence 801(d)(2).  Second, as with the letters, the record

16  suggests plaintiffs would be able to cure any possible hearsay

17  prior to trial by, for example, relying on Citi's servicing notes

18  where Citi representatives recorded what was communicated to

19  plaintiffs.  The court therefore overrules Citi's objections.[1]

20  III. Discussion

21        Summary judgment is proper "if the movant shows that

22  there is no genuine dispute as to any material fact and the

23  _____

24        [1]    Citi also contends plaintiffs should not be permitted
   to present any oral argument and that the court should deem
   Citi's material facts set forth in its separate statement as
25  undisputed because plaintiffs' opposition was untimely.  (Citi's
   Reply at 1 n.1 (Docket No. 77).)  Plaintiffs were required to
26  file their opposition by midnight on August 8, 2016 and they
   instead filed at 5:48 a.m. on August 9, 2016.  The court will not
27  decide this motion for summary judgment based on such a
   procedural technicality.
28

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at

9

255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  <u>Id.</u>

    A.   <u>Breach of Contract and of the Implied Covenant of Good Faith and Fair Dealing</u>

A claim for breach of contract requires (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damages to the plaintiff.  <u>Reichert v. Gen. Ins. Co. of Am.</u>, 68 Cal. 2d 822, 830 (1968).  Further, "[i]mplied in every contract is a covenant of good faith and fair dealing that neither party will injure the right of the other to receive the benefits of the agreement."  <u>Wolkowitz v. Redland Ins. Co.</u>, 112 Cal. App. 4th 154, 162 (2d Dist. 2003).  "A cause of action for tortious breach of the covenant of good faith and fair dealing requires the existence and breach of an enforceable contract as well as an independent tort."  <u>Innovative Bus. P'ships, Inc. v. Inland Cntys. Reg'l Ctr., Inc.</u>, 194 Cal. App. 4th 623, 631-32 (4th Dist. 2011).

The United States Department of the Treasury started the HAMP program in 2009 in response to the financial crisis to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their homes.  <u>Corvello v. Wells Fargo Bank, NA</u>, 728 F.3d 878, 880 (9th Cir. 2013).  HAMP aims to assist homeowners who have defaulted or are in imminent danger of defaulting on their home mortgages.  <u>Inman v. Suntrust Mortg., Inc.</u>, Civ. No. 1:10-1031 AWI GSA, 2010 WL 3516309, at *1 n.2

1   (E.D. Cal. Sept. 3, 2010).

2            Eligible borrowers who wish to permanently modify their

3   loan through HAMP must first enter a TPP, which is a period of

4   three or more months during which the borrower must make timely

5   trial payments of the modified amount and provide required

6   documentation to the loan servicer.  Corvello, 728 F.3d at 880-

7   81.  If the servicer concludes that the borrower is not eligible

8   for HAMP after reviewing the documents submitted or the borrower

9   does not make the required trial payments, the servicer must

10  promptly communicate the ineligibility determination to the

11  borrower in writing.  Id. at 881.  If the borrower complies with

12  the terms of the TPP, the servicer must offer the borrower a

13  permanent loan modification.  Id.

14           Home loan servicers receive financial incentives from

15  the United States Department of the Treasury for completing a

16  HAMP loan modification: servicers are entitled to $1,000 for each

17  permanent modification they make.  Id. at 880.  There are, at the

18  same time, financial incentives for allowing a borrower to

19  participate in a TPP but then proceeding to foreclosure rather

20  than offering a permanent modification.  As Citi's representative

21  Jeanne Pezold explained, "each time a payment is made by the

22  borrower the servicer retains a servicing fee."  (See Yap Decl.

23  Ex. B, Pezold Dep. at 106:18-20.)  Once a borrower defaults and

24  stops making payments, the servicer cannot collect its servicing

25  fees until the foreclosure sale.  At that time, the lender pays

26  the servicer the total fees owed for servicing the loan after the

27  date of default.  (Id. at 107:1-25, 108:2-10.)  If the servicer

28  offers a TPP before proceeding to foreclosure, it is able to

11

1  extend the number of months between default and the foreclosure

2  sale, thereby increasing its own servicing fees.

3       "[A] trial loan modification under HAMP constitutes a

4  valid, enforceable contract under state law . . . ." West v.

5  JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 799 (4th Dist.

6  2013) (citing Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556-

7  57 (7th Cir. 2012)); see also Corvello, 728 F.3d at 883-84

8  (citing West with approval); Meixner v. Wells Fargo Bank, N.A.,

9  101 F. Supp. 3d 938, 947 (E.D. Cal. Apr. 24, 2015) (Nunley, J.)

10 ("The Ninth Circuit has recently held that, . . . a TPP Agreement

11 offered pursuant to HAMP is a contract, and a party to that

12 contract may sue for breach if the lender violates a term

13 contained within the four corners of the TPP." (citing Corvello,

14 728 F.3d at 880) (internal quotation marks omitted)).  While the

15 modification is not complete until all of the conditions are met,

16 banks are contractually obligated under the terms of the TPP to

17 offer a permanent modification to borrowers who comply with the

18 TPP by (1) timely making the required trial payments and (2)

19 submitting accurate documentation.  Corvello, 728 F.3d at 883.

20 The Ninth Circuit has explained that this "interpretation of the

21 TPP avoids the injustice that would result were . . . [banks]

22 allowed to keep borrowers' trial payments without fulfilling any

23 obligations in return."  Id. at 884.

24       1.  Timely Trial Payments

25       The first question is therefore whether plaintiffs

26 timely made the required trial payments.  The court concludes for

27 the following reasons that they did.

28       "'The interpretation of a written instrument, even

1  though it involves what might properly be called questions of

2  fact, is essentially a judicial function to be exercised

3  according to the generally accepted canons of interpretation so

4  that the purposes of the instrument may be given effect. . . . It

5  is therefore solely a judicial function to interpret a written

6  instrument unless the interpretation turns upon the credibility

7  of extrinsic evidence.'" Greater Middleton Ass'n v. Holmes

8  Lumber Co., 222 Cal. App. 3d 980, 989 (1st Dist. 1990) (quoting

9  Parsons v. Bristol Dev. Co., 62 Cal. 2d 861, 865 (1965)); see

10 also Oceanside 84, Ltd., 56 Cal. App 4th at 1448 ("[T]he

11 interpretation of the contract is a question of law for the trial

12 court and for this court."); Titan Grp., Inc. v. Sonoma Valley

13 Cnty. Sanitation Dist., 164 Cal. App. 3d 1122, 1127 (1st Dist.

14 1985) ("In the absence of conflicting extrinsic evidence, the

15 interpretation of a contract becomes a question of law and an

16 appellate court 'must make an independent determination of the

17 meaning of the contract.'" (citation omitted)).

18      While the TPP required three timely payments by the

19 first of July, August, and September 2011 and plaintiffs did not

20 pay until July 15, August 11, and September 15, 2011,

21 respectively, the TPP also stated that "[i]f each payment is not

22 received by CitiMortgage, Inc. in the month in which it is due,

23 this offer will end and your loan will not be modified under the

24 Making Home Affordable Program." (Blankenchip Decl. Ex. G

25 (emphasis added).)

26      This end of month language was also emphasized in an

27 August 5, 2011 letter Citi sent plaintiffs to notify them that it

28 had not yet received their August 1, 2011 TPP payment. (Cohoon

1  Decl. Ex. 13.)  The letter stated, "If you fail to make a Trial

2  Payment by the last day of the month in which it is due, you will

3  be considered to have failed the trial period and will not be

4  eligible for a HAMP modification." (Id.)  That Citi included

5  this language in a reminder sent on the fifth of August--after

6  the second payment was supposedly due--and sought payment despite

7  plaintiffs' having made their first trial payment after the first

8  of July, all suggest that Citi intended to accept payment after

9  the first of the month and still considered plaintiffs to be

10  eligible for a HAMP loan modification.

11       At the August 22, 2016 hearing, Citi argued that the

12  TPP "could not be more clear" in stating that Citi was obligated

13  to suspend foreclosure proceedings only if plaintiffs made their

14  first payment by July 1, 2011, but if plaintiffs paid after the

15  first of the month, Citi had the option of offering plaintiffs a

16  permanent loan modification but no obligation to permanently

17  modify or suspend foreclosure.  Citi representative Jeanine

18  Cohoon stated: "For them to be able to be considered for the

19  modification they were pursuing, they just had to make the

20  payment within the month it's due.  To get any additional

21  protections regarding the foreclosure process, they had to make

22  their first payment by the first of July." (Id. Ex. E, Cohoon

23  Dep. Volume II at 151:16-22; see also id. Ex. D, Cohoon Dep.

24  Volume II at 95:5-22.)

25       This distinction with regard to Citi's obligations is

26  not at all clear from the face of the TPP or Citi's conduct

27  throughout the loan modification process.  The offer letter did

28  not explicitly state that if plaintiffs paid after the first of

1   the month, their loan <u>might</u> be modified and no foreclosure

2   protection would be provided.  Rather, it stated that if

3   plaintiffs did not pay by the end of the month, their loan "<u>will</u>

4   <u>not</u> be modified under the Making Home Affordable Program."

5   (Blankenchip Decl. Ex. G (emphasis added).)  It defies logic to

6   claim that plaintiffs could still be participating in the loan

7   modification program under HAMP and yet have no protection

8   against foreclosure.  In fact, Citi's own 2010 HAMP policies and

9   procedures for government sponsored enterprises ("GSE") loans

10  stated that "Receipt of the first payment due under the trial

11  period plan <u>on or before the last day of the month</u> in which the

12  first payment is due is evidence of the borrower's acceptance of

13  the trial period plan and <u>its terms and conditions</u>."  (Hymanson

14  Decl. Ex. C at 10 (emphasis added).)  One term of the TPP is that

15  Citi will not proceed to foreclosure sale during the trial

16  period.

17          Even assuming Citi's interpretation could be reconciled

18  with the terms stated in the TPP, its interpretation would at

19  most render the TPP terms ambiguous.  "If a contract is capable

20  of two different reasonable interpretations, the contract is

21  ambiguous.  A well-settled maxim states the general rule that

22  ambiguities in a form contract are resolved against the drafter."

23  <u>Oceanside 84, Ltd. v. Fid. Fed. Bank</u>, 56 Cal. App. 4th 1441, 1448

24  (2d Dist. 1997); <u>see also</u> Cal. Civ. Code § 1654 ("In cases of

25  uncertainty not removed by the preceding rules, the language of a

26  contract should be interpreted most strongly against the party

27  who caused the uncertainty to exist.").  Citi is not only the

28  drafter of the agreement but also the more sophisticated party

1    and any ambiguity in the TPP agreement should be interpreted

2    against it.  The court therefore finds that, properly

3    interpreted, the TPP agreement provided plaintiffs a grace period

4    until the end of the month for their three trial payments.

5    Accordingly, the court will not grant Citi's motion for summary

6    judgment based on the fact that plaintiffs paid their trial

7    payments after the first of the month but before the end of the

8    month.

9                    2.   Required Documents

10              The next question is whether plaintiffs submitted all

11   the required documents under the TPP and, if not, if Citi

12   properly informed plaintiffs that it was cancelling the TPP due

13   to a failure to comply.  For the following reasons, the court

14   finds that there are triable issues of fact regarding both

15   plaintiffs' submission of documents and Citi's notice of

16   cancellation.

17              Citi's representative, Sinner, stated in his deposition

18   that plaintiffs did not get a permanent loan modification because

19   "they were still missing documents from what the underwriter

20   requested."  (Yap Decl. Ex. A, Sinner Dep. at 127:23-25.)  Sinner

21   also admitted, however, that the Homeowner Support Specialist

22   assigned to work with plaintiffs, Burris, told plaintiffs

23   otherwise.  (Id. at 121:16-25, 128:1-10.)  Sinner stated: "It

24   looks like Miss Burris may have missed asking for" the missing

25   documents "or may have misinformed the Blankenchips" that their

26   file was in order.  (Id. at 128:8-10.)

27              Citi's servicing notes for plaintiffs' loan indicate

28   that on September 21, 2011, Mr. Blankenchip called and reported

                                16

1   that he had just been told by Burris that their file was "in

2   order" but then received a letter stating the Forbearance Plan

3   was cancelled.  (Cohoon Decl. Ex. 3, Servicing Notes at 58

4   ("RANDY BLANKENCHIP called in std spoke with counselor this week

5   was adv file in order then rec letter date 9/12 stating [plan]

6   cancelled due to nonpymt . . . asked that counselor call using

7   cell number.").)  The notes further indicate that Burris called

8   Mr. Blankenchip back on September 22, 2011 and advised him that

9   he received the letter because his TPP was completed and Burris

10  would be working with the closer to have the final permanent

11  modification documents sent out.  (Id. ("RANDY BLANKENCHIP had

12  beena dvthat he rcvd the for term letter b/c his tpp has been

13  completed and that I will be working with the closer to have

14  final docs sent out.").)

15          Citi accepted plaintiffs' three trial payments, even

16  the payment received two days after the cancellation letter was

17  mailed, and provided plaintiffs conflicting information about the

18  documents required to proceed.  Plaintiffs have therefore

19  established genuine issues of material fact as to whether they

20  submitted the required documents and whether Citi properly

21  notified them that they failed to comply with the terms of the

22  TPP.

23          Lastly, Citi argues that even if plaintiffs timely made

24  the TPP payments and submitted the required documents, Citi

25  determined on October 10, 2011 that they were no longer eligible

26  for a permanent modification because a permanent modification

27  would have increased their interest rate from 3% to 3.75%, which

28  Citi contends is not allowed under HAMP.  (Citi's Mot. at 5, 7;

17

1    Cohoon Decl. Ex. 3, Servicing Notes at 48-49, Ex. 4, Apr. 20,

2    2011 Letter from Citi.)  According to the TPP offer letter,

3    however, plaintiffs' eligibility did not depend on the interest

4    rate of their loan.  This was not part of the contract Citi

5    drafted and invited plaintiffs to accept, despite plaintiffs'

6    note making clear that the loan had an adjustable interest rate

7    that would change on June 1, 2011, (Cohoon Decl. Ex. 1), and

8    Citi's knowledge that the rate would drop to 3% as early as April

9    20, 2011, when it sent plaintiffs a letter notifying them of the

10   new interest rate, (id. Ex. 4).  Accordingly, Citi cannot claim

11   that plaintiffs were ineligible for a permanent modification

12   because of an interest rate adjustment that Citi was aware of

13   before it even mailed the TPP offer letter.

14        In addition, plaintiffs' expert witness, Tara Twomey,

15   explained that "there's a provision in the . . . [HAMP]

16   guidelines that requires . . . at least a one-eighth of a percent

17   reduction in the interest rate" through a HAMP loan modification.

18   (Hymanson Decl. Ex. A, Twomey Dep. at 72:16-21 (Docket No. 74-

19   3).)  Twomey stated, however, that "under the HAMP guidelines and

20   under the Freddie Mac guidelines, when you have an adjustable

21   rate loan," if "the new interest rate, is not determined at the

22   time the TPP underwriting is done, then the servicer assumes

23   essentially a flat line, so the interest rate stays the same, and

24   they can issue the TPP on that basis."  (Id. at 71:24-25, 72:1-

25   11.)  Twomey therefore believes that Citi offered plaintiffs a

26   TPP based on their verified income and original interest rate of

27   6.625% and had no reason to conduct a "rereview at the end" of

28   the trial period.  (Id. at 74:9-25.)

1    This is corroborated by the United States Department of

2  the Treasury's Supplemental Directive 09-07, which provides that

3  "[w]ith respect to adjustable rate loans where there is a rate

4  reset scheduled within 120 days after the date of the evaluation

5  . . . the monthly mortgage payment used to determine eligibility

6  will be the greater of (i) the borrower's current scheduled

7  monthly mortgage payment or (ii) a fully amortizing monthly

8  mortgage payment based on the note reset rate using the index

9  value as of the date of the evaluation."[2]  (Pls.' Req. for

10 Judicial Notice ("RJN") Ex. A (Docket No. 75-1).)  Viewing the

11 evidence in the light most favorable to the non-moving party,

12 plaintiffs have established a genuine issue of fact as to whether

13 they were eligible for a permanent HAMP modification despite

14 Citi's realization four months after offering plaintiffs a TPP

15 that their interest rate would decrease to 3%.

16    For all the above reasons, the court will deny Citi's

17 motion for summary judgment on plaintiffs' breach of contract and

18 breach of good faith and fair dealing claims.

19    B.   Promissory Estoppel

20    The elements of promissory estoppel are: "(1) a promise

21 clear and unambiguous in its terms; (2) reliance by the party to

22 whom the promise is made; (3) [the] reliance must be both

23 reasonable and foreseeable; and (4) the party asserting the

24 estoppel must be injured by his reliance." U.S. Ecology, Inc. v.

25 State, 129 Cal. App. 4th 887, 901 (4th Dist. 2005) (citation and

26

27    [2]    Freddie Mac servicers are required to comply with the
Department of the Treasury's Supplemental Directives.  (See Pls.'
RJN Ex. D at 1.)  Citi serviced plaintiffs' loan on behalf of

28 Freddie Mac.

1  internal quotation marks omitted) (alteration in original); see
2  West, 214 Cal. App. 4th at 803.  "Because promissory estoppel is
3  an equitable doctrine to allow enforcement of a promise that
4  would otherwise be unenforceable, courts are given wide
5  discretion in its application."  U.S. Ecology, Inc., 129 Cal.
6  App. 4th at 902 (citing C & K Eng'g Contractors v. Amber Steel
7  Co., 23 Cal. 3d 1, 7-8 (1978)).

8          "[A]llegations that the plaintiff undertook new
9  obligations or forewent other options can establish reliance for
10 purposes of a promissory estoppel claim."  Meadows v. First Am.
11 Tr. Servicing Sols., LLC, Civ. No. 11-5754 YGR, 2012 WL 3945491,
12 at *4 (N.D. Cal. Sept. 10, 2012); see also West, 214 Cal. App.
13 4th at 805 (finding the plaintiffs adequately alleged detrimental
14 reliance where the plaintiffs alleged they lost opportunities,
15 including selling their home or finding a co-signer).  "'Except
16 in the rare case where the undisputed facts leave no room for a
17 reasonable difference of opinion, the question of whether a
18 plaintiff's reliance is reasonable is a question of fact.'"  All.
19 Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995) (quoting
20 Blankenheim v. E. F. Hutton & Co., 217 Call. App. 3d 1463, 1475
21 (6th Dist. 1990)).  "'However, whether a party's reliance was
22 justified may be decided as a matter of law if reasonable minds
23 can come to only one conclusion based on the facts.'"  Id.
24 (quoting Guido v. Koopman, 1 Cal. App. 4th 837, 843 (1st Dist.
25 1991)).

26         At the August 22, 2016 hearing, plaintiffs conceded
27 that their promissory estoppel claim is barred by the statute of
28 limitations to the extent it is based on oral promises.

1   Accordingly, the court will grant Citi's motion for summary

2   judgment of plaintiffs' promissory estoppel claim as to any

3   alleged oral promises.

4           With respect to plaintiffs' promissory estoppel claim

5   based on the promises Citi made in the written TPP agreement,

6   Citi argues that plaintiffs fail to demonstrate that their

7   reliance on the TPP was reasonable or justifiable because (1) the

8   TPP stated that Citi would not proceed to foreclosure sale <u>if</u>

9   plaintiffs paid the first trial payment by July 1, 2011 and

10  plaintiffs failed to pay by July 1, 2011, and (2) the TPP

11  provided that any pending foreclosure action could be resumed if

12  plaintiffs were notified in writing that they failed to comply

13  with the TPP or did not qualify for a permanent modification and

14  Citi sent plaintiffs a letter on September 12, 2011 notifying

15  them the TPP had been cancelled.  (Citi's Mot. at 13-14.)

16          As discussed above, the contract, properly interpreted,

17  provided plaintiffs a grace period for trial payments until the

18  end of the month.  Given that plaintiffs thus continued to

19  participate in the HAMP loan modification process by making

20  payments in the middle of the month, they were entitled to

21  receive the same foreclosure protections regardless of whether

22  they paid on the first or fifteenth of the month.  A jury could

23  therefore find that their reliance on the TPP foreclosure

24  protections was reasonable.

25          Though Citi sent a letter on September 12, 2011 stating

26  that plaintiffs' "Forbearance Plan" had been cancelled, Mr.

27  Blankenchip claims he did not know what Citi meant by this letter

28  as Citi had never used the term "Forbearance Plan" before.

1   (Blankenchip Decl. ¶ 35.)  When he called Citi for clarification,

2   Burris did not explain that his TPP had been cancelled but rather

3   told him his file was in order and final permanent modification

4   documents would be sent out shortly.  There is therefore a

5   dispute as to whether Citi properly communicated its

6   ineligibility determination to plaintiffs.  Accordingly, the

7   question of whether plaintiffs reasonably relied on the TPP is

8   one that must be decided by the factfinder at trial and cannot be

9   decided on a motion for summary judgment.

10          Citi further argues that plaintiffs cannot establish

11  they reasonably relied on Citi's November 3, 2011 correspondence

12  to plaintiffs.  (Citi's Mot. at 14.)  The November 3, 2011 letter

13  informed plaintiffs that the "deadline for you to return the

14  required documentation for the Home Affordable Modification

15  Program has been extended" to December 5, 2011.  (Cohoon Decl.

16  Ex. 17.)  It further stated, "The deadline is real--don't risk

17  being dropped from the program.  You are at risk and will be

18  removed from the program If [sic] we do not receive your

19  documents by the deadline."  (Id.)  Citi nonetheless went ahead

20  with a foreclosure sale on November 10, 2011--prior to the

21  deadline set in this letter.  While Citi argues both that its

22  November 3, 2011 correspondence did not clearly or unambiguously

23  promise the foreclosure sale would be postponed and that it was

24  sent to plaintiffs in error, (Citi's Mot. at 5 n.1, 14), Mr.

25  Blankenchip states that no one ever informed him it was sent in

26  error, (Blankenchip Decl. ¶ 45).  He also represents that, while

27  he believed he had already submitted all the required documents,

28  he was willing and ready to send any additional documents

                                    22

1  necessary for a modification.  (<u>Id.</u> ¶ 46.)  The letter seemed to

2  suggest that plaintiffs were still eligible for a modification

3  and participating in the "Home Affordable Modification Program."

4  Plaintiffs have therefore sufficiently established a dispute as

5  to whether they reasonably relied on this letter.

6          Accordingly, the court will deny Citi's motion for

7  summary judgment on plaintiffs' promissory estoppel claim based

8  on Citi's written promises.

9          C.   <u>Wrongful Foreclosure</u>

10         The elements of wrongful foreclosure are: "(1) the

11  trustee or mortgagee caused an illegal, fraudulent, or willfully

12  oppressive sale of real property pursuant to a power of sale in a

13  mortgage or deed of trust; (2) the party attacking the sale

14  suffered prejudice or harm; and (3) the trustor or mortgagor

15  tenders the amount of the secured indebtedness or was excused

16  from tendering."  <u>West</u>, 214 Cal. App. 4th at 800.

17         Citi first argues it is entitled to summary judgment

18  because plaintiffs failed to tender the full amount due under

19  their loan.  (Citi's Mot. at 8.)  "Tender is not required,"

20  however, "where the foreclosure sale is void, rather than

21  voidable, such as when a plaintiff proves that the entity lacked

22  the authority to foreclose on the property."  <u>Glaski v. Bank of</u>

23  <u>Am., Nat'l Ass'n</u>, 218 Cal. App. 4th 1079, 1100 (2013); <u>see also</u>

24  <u>McGarvey v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 2:13-01099 KJM

25  EFB, 2013 WL 5597148, at *11 (E.D. Cal. Oct. 11, 2013) ("Tender

26  is required only when foreclosure has already occurred and the

27  plaintiff alleges irregularities in the foreclosure process

28  itself.").  As this court explained in its December 3, 2014 Order

1   denying Citi's motion to dismiss plaintiffs' wrongful foreclosure

2   claim on this same ground, "[h]ere, plaintiffs are not seeking to

3   set aside a foreclosure sale that was procedurally flawed" but

4   rather are seeking "damages based on the alleged invalidity of

5   the foreclosure sale in the first place."  (Dec. 3, 2014 Order at

6   8.)  Because plaintiffs contend the foreclosure was wrongful

7   because it was <u>void</u>, the court once again finds that plaintiffs

8   need not have tendered.

9          Citi next argues that it is entitled to summary

10  judgment because plaintiffs cannot produce evidence to establish

11  prejudice because they defaulted on their loan, would not have

12  qualified for a permanent HAMP modification or traditional

13  modification under any circumstances, and the trustee's sale was

14  therefore unavoidable.  As discussed above, however, there is a

15  genuine issue of fact as to whether plaintiffs qualified for a

16  permanent HAMP modification and the foreclosure was avoidable.

17  Accordingly, the court must deny Citi's motion for summary

18  judgment on plaintiffs' wrongful foreclosure claim.

19        D.   <u>Fraud</u>

20          "The elements of a cause of action for fraud in

21  California are: '(a) misrepresentation (false representation,

22  concealment, or nondisclosure); (b) knowledge of falsity (or

23  "scienter"); (c) intent to defraud, i.e., to induce reliance; (d)

24  justifiable reliance; and (e) resulting damage.'"  <u>Kearns v. Ford</u>

25  <u>Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009) (citation and

26  emphasis omitted); <u>see</u> <u>Stansfield v. Starkey</u>, 220 Cal. App. 3d

27  59, 72-73 (2d Dist. 1990).  To maintain an action for fraud

28  "based on a false promise, one must specifically allege and

1  prove, among other things, that the promisor did not intend to

2  perform at the time he or she made the promise and that it was

3  intended to deceive or induce the promisee to do or not do a

4  particular thing."  Tarmann v. State Farm Mut. Auto. Ins. Co., 2

5  Cal. App. 4th 153, 159 (6th Dist. 1991).  "[M]aking a promise

6  with an honest but unreasonable intent to perform is wholly

7  different from making one with no intent to perform and,

8  therefore, does not constitute a false promise."  Id.

9         Plaintiffs argue Citi falsely promised to provide a

10  permanent loan modification and suspend foreclosure proceedings

11  during the TPP without ever intending to honor these promises.

12  (Pls.' Opp'n at 21.)  The TPP offer letter in and of itself--with

13  its contradicting first of the month and end of the month

14  deadlines--is enough to call into question whether Citi ever

15  intended to fulfill its promises.  Cohoon's explanation that the

16  two deadlines meant Citi had an obligation to provide foreclosure

17  protection and a permanent loan modification only if plaintiffs

18  made their first payment by July 1, 2011 and discretion if they

19  paid within the month, (see Yap Decl. Ex. E, Cohoon Dep. Volume

20  II at 151:16-22), suggests that Citi wanted to be able to leave

21  both the pathway to foreclosure and the pathway to modification

22  open at all times.  While the TPP offer letter may simply have

23  been negligently drafted, a reasonable jury could also find that

24  Citi intentionally wrote its offer in such a fashion to best

25  position Citi to retract its promises if it so decided.  Even if

26  Citi suspended the foreclosure sale on multiple occasions and

27  made some efforts towards modifying plaintiffs' loan, it was also

28  simultaneously exploring the possibility of foreclosure--always

25

1   looking for whichever option better benefited it and never fully

2   committing to honoring its promises to plaintiffs.  As discussed

3   above, a reasonable jury could also find that Citi had a

4   financial incentive to take plaintiffs through the loan

5   modification process rather than immediately foreclosing, even if

6   it never intended to offer them a permanent loan modification.

7   Though the trustee's sale resulted in a deficiency of

8   $217,576.79, (Cohoon Decl. ¶ 59, Ex. 19), the investor--Freddie

9   Mac--bore this loss and still paid Citi $997.16 in servicing fees

10  at the time of foreclosure, (id. ¶ 62, Ex. 21; Yap Decl. Ex. B,

11  Pezold Dep. at 106-110).

12          Further, as discussed above in the context of

13  plaintiffs' promissory estoppel claim, plaintiffs have also

14  established the element of justifiable reliance.  Accordingly,

15  the court must deny Citi's motion for summary judgment on

16  plaintiffs' fraud claim.

17          E.   Intentional Infliction of Emotional Distress

18          The statute of limitations for a claim of intentional

19  infliction of emotional distress in California is two years.

20  Cal. Civ. Code § 335.1.  "Generally, a limitations period begins

21  to run upon the occurrence of the last fact essential to the

22  cause of action."  Pugliese v. Superior Ct., 146 Cal. App. 4th

23  1444, 1452 (2d Dist. 2007).  At the August 22, 2016 hearing,

24  plaintiffs conceded that their intentional infliction of

25  emotional distress claim is barred by the statute of limitations.

26  Accordingly, the court must find that plaintiffs' intentional

27  infliction of emotional distress claim is time barred and grant

28  Citi's motion for summary judgment on this claim.

1          F.   Unfair Competition Law

2          California's UCL prohibits "any unlawful, unfair or

3    fraudulent business act or practice."  Cal. Bus. & Prof. Code

4    § 17200.  "The UCL's purpose is to protect both consumers and

5    competitors by promoting fair competition in commercial markets

6    for goods and services."  Kasky v. Nike, Inc., 27 Cal. 4th 939,

7    949 (2002) (citing Barquis v. Merchs. Collection Ass'n, 7 Cal. 3d

8    94, 110 (1972)).  Under this statute, a prevailing plaintiff is

9    generally limited to injunctive relief and restitution of any

10   interest acquired by means of unfair competition.  See Cal. Bus.

11   & Prof. Code § 17203; Cel-Tech Commc'ns, Inc. v. L.A. Cellular

12   Tel. Co., 20 Cal. 4th 163, 179 (1999).

13         Citi first contends that plaintiffs do not have

14   standing to assert a UCL claim.  A private person has standing to

15   sue under the UCL if he can "(1) establish a loss or deprivation

16   of money or property sufficient to qualify as injury in fact,

17   i.e., economic injury, and (2) show that that economic injury was

18   the result of, i.e., caused by, the unfair business practice or

19   false advertising that is the gravamen of the claim."  Kwikset

20   Corp. v. Superior Ct., 51 Cal. 4th 310, 322 (2011).  The purpose

21   of the UCL standing requirement is to "eliminate standing for

22   those who have not engaged in any business dealings with would-be

23   defendants and thereby strip such unaffected parties of the

24   ability to file 'shakedown lawsuits,' while preserving for actual

25   victims of deception and other acts of unfair competition the

26   ability to sue and enjoin such practices."  Id. at 317.

27   Plaintiffs clearly had a business relationship with Citi and

28   suffered injury due to a loss of real property through

1  foreclosure and poor credit ratings.

2          To establish that the economic injury was the result of

3  an unfair business practice, a plaintiff must show a "causal

4  connection or reliance on the alleged misrepresentation."  Id. at

5  326 (citation and internal quotation marks omitted).  "A

6  plaintiff fails to satisfy the causation prong of the statute if

7  he or she would have suffered 'the same harm whether or not a

8  defendant complied with the law.'"  Jenkins v. JP Morgan Chase

9  Bank, N.A., 216 Cal. App. 4th 497, 522 (4th Dist. 2013) (quoting

10  Daro v. Superior Ct., 151 Cal. App. 4th 1079, 1099 (1st Dist.

11  2007)).

12          For example, in Jenkins, the court found the plaintiff

13  lacked standing under the UCL because she could not establish a

14  causal link between the foreclosure of her home and the

15  defendant's six unlawful or unfair acts, all of which occurred

16  after the plaintiff defaulted on her loan.  Id. at 523.  Even if

17  the defendant had not acted unfairly, the plaintiff still would

18  have defaulted and suffered the same economic injury.

19          Unlike in Jenkins, plaintiffs entered into a TPP

20  agreement with Citi to cure their initial default and reinstate

21  the loan.  Plaintiffs have established a genuine issue of fact

22  with respect to whether they qualified for a permanent HAMP

23  modification and, as a result, whether a trustee's sale was

24  inevitable.  A reasonable jury could therefore find that

25  plaintiffs did not suffer injury due to their own inability to

26  pay but rather because of Citi's unfair or unlawful conduct

27  despite plaintiffs having made the three trial period payments

28  within the month in which they were due.  Accordingly, the court

28

1   must deny Citi's motion for summary judgment of plaintiffs' UCL
2   claim for lack of standing.

3        The UCL "establishes three varieties of unfair
4   competition--acts or practices which are unlawful, or unfair, or
5   fraudulent." Cel-Tech Commc'ns, Inc., 20 Cal. 4th at 180. "Each
6   prong of the UCL is a separate and distinct theory of liability"
7   and offers an "independent basis for relief." Kearns v. Ford
8   Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) (citing S. Bay
9   Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861
10  (4th Dist. 1999)).

11       As discussed above, a question of fact remains for
12  trial as to whether Citi made false promises with fraudulent
13  intent.  Accordingly, the court must also find there is a genuine
14  dispute of fact as to plaintiffs' fraud claim under the UCL based
15  on this same allegation.

16       Plaintiffs also contend Citi engaged in unlawful
17  business practices by breaching its obligations under the TPP
18  agreement and selling plaintiffs' home at a foreclosure auction.
19  "An action is unlawful under the UCL and independently actionable
20  if it constitutes a violation of another law, 'be it civil or
21  criminal, federal, state, or municipal, statutory, regulatory, or
22  court-made.'" Cooksey v. Select Portfolio Servicing, Inc., Civ.
23  No. 2:14-1237 KJM KJN, 2014 WL 4662015, at *7 (E.D. Cal. Sept.
24  18, 2014); see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th
25  1457, 1474-75 (2d Dist. 2006) ("By extending to business acts or
26  practices which are 'unlawful,' 'the UCL permits violations of
27  other laws to be treated as unfair competition that is
28  independently actionable.'" (citation omitted)).  Given that

1  plaintiffs have established a genuine dispute of material fact

2  regarding Citi's breach of contract, promissory estoppel, and

3  wrongful foreclosure, plaintiffs have also established a dispute

4  regarding Citi's unlawful business acts or practices under the

5  UCL.

6          Accordingly, the court will deny Citi's motion for

7  summary judgment on plaintiffs' UCL claim.

8          G.   <u>Punitive Damages</u>

9          Plaintiffs seek punitive damages with respect to their

10 claims for fraud and unlawful business practices under the UCL.

11 (FAC at 19-20.)  Citi moves for summary judgment on the ground

12 that plaintiffs are not entitled to punitive damages as a matter

13 of law.  (Citi's Mot. at 22.)

14          Pursuant to California Civil Code section 3294, a

15 plaintiff may recover punitive damages "[i]n an action for the

16 breach of an obligation not arising from contract, where it is

17 proven by clear and convincing evidence that the defendant has

18 been guilty of oppression, fraud, or malice."  Cal. Civ. Code

19 § 3294(a).  Punitive damages are "for the sake of example and by

20 way of punishing the defendant."  <u>Id.</u>  Subsection (c) defines

21 fraud as "an intentional misrepresentation, deceit, or

22 concealment of a material fact known to the defendant with the

23 intention on the part of the defendant of thereby depriving a

24 person of property or legal rights or otherwise causing injury."

25 <u>Id.</u> § 3294(c).

26          Given that the court has already found a genuine issue

27 of material fact regarding Citi's fraudulent conduct, the court

28 must deny Citi's motion for summary judgment on plaintiffs'

1   punitive damages request and leave it for a jury to determine

2   whether Citi's actions reach the requisite level of intent.

3          IT IS THEREFORE ORDERED that Citi's motion for summary

4   judgment (Docket No. 72) be, and the same hereby is, GRANTED on

5   plaintiffs' intentional infliction of emotional distress claim

6   and promissory estoppel claim as to any alleged oral promises,

7   and DENIED in all other respects.

8   Dated:   August 26, 2016

9

WILLIAM B. SHUBB
10                              UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                31